The Peoples Natural Gas Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. United States Steel Corporation, Intervenor.

202

Argued May 6, 1980, before President Judge CRUMLISH, and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG and WILLIAMS, JR. Judge MACPHAIL did not participate.

*Robert H. Young*, with him *Walter R. Hall, II*, and *Thomas P. Gadsden;* of counsel, *John J. Mullally, Roger E. Wright* and *Robert Jacobs, Morgan, Lewis & Bockius*, for petitioner.

*Gilbert L. Hamberg*, Assistant Counsel, with him *Steven A. McClaren*, Deputy Chief Counsel, *George M. Kashi*, Chief Counsel and *Joseph J. Malatesta, Jr.*, Chief Counsel, for respondent.

*Daniel Clearfield,* Assistant Consumer Advocate, with him *Richard D. Spiegelman, Norman Kennard,* Assistant Consumer Advocates, *Walter W. Cohen,* Consumer Advocate, and *Charles J. Streiff, Wick, Vuono & LaVelle,* for intervenor, Consumer Advocate.

*Marvin A. Fein,* Utilities Counsel, with him *Mead J. Mulvihill, Jr.,* City Solicitor, for intervenors, City of Pittsburgh and Mayor Richard S. Caliguiri.

OPINION BY JUDGE WILKINSON, JR., June 17, 1980:

The Peoples Natural Gas Company (Petitioner) has appealed a final order of the Pennsylvania Public Utility Commission (Commission), disallowing approximately 10.8 million dollars of a requested 14.3 million dollar increase in revenues. We affirm.

Petitioner is a wholly owned subsidiary of the Consolidated Natural Gas Company actively engaged in various phases of the natural gas business in Pennsylvania. On January 27, 1978, Supplement No. 14 to Tariff Gas—Pa. P.U.C. No. 37 proposing additional annual revenues of $14,287,797[1] was filed by Petitioner. Complaints were filed against the proposed rates by the City of Pittsburgh, seven industrial customers, the Alliance for Consumer Protection, the Consumer Advocate, and the Reverend H. Dean Michaels, Sr. By order dated March 1, 1978, Supplement No. 14 was suspended pending investigation into the fairness, reasonableness, and lawfulness of the proposed rates. On September 11, 1978, the administrative law judge to whom the case had been assigned recommended that only $4,467,253 of the proposed increase be approved. The Commission in turn allowed an increase of only $3,573,974 from which order Petitioner now appeals.

---

[1] Corrected during the proceedings to $14,412,425 the proposed supplement would have increased annual revenues by approximately 11.0% exclusive of state tax adjustment surcharge revenues.

Petitioner's main argument concerns the adequacy of the rate of return allowed it by the Commission and in particular the mechanics of the analysis used to arrive at that figure. On a finding that the current cost of common equity was 13.50%, the Commission reasoned that an overall rate of return of 8.23% was appropriate when applied to a fair value rate base of 290 million dollars.[2] Petitioner contends that the Commission has, by the use of fictitious derived percentages unrelated to any cost of capital evidence, effectively set rates on an original cost basis rather than on fair value.

Although this Court has in the past struggled to evaluate the propriety of the Commission's methods and assess the accuracy and validity of its mathematical calculations,[3] such an approach is no longer appropriate. *Pennsylvania Public Utility Commission v. Pennsylvania Gas & Water Co.,*    Pa.    , A.2d    (filed February 1, 1980). Recognition of our narrow scope of review of Commission utility rate determinations should not, however, be misunderstood as a willingness to countenance arbitrary Commission action unsupported by the record or the implementation of ratemaking policy unfounded in law or reason.

Where, as here, the Commission has fully detailed the methods and reasoning underlying the contested rates and evidence of record supports its conclusions, a complaining utility on appeal to this Court must demonstrate the unreasonableness or unjustness of those rates. "Unless the [Commission's] decision does not bear a real and substantial relationship to the regulatory objects sought to be obtained by it, that

---

[2] Petitioner does not contest the validity of the Commission's fair value rate base finding.

[3] Characterized by Justice NIX in the cited opinion as "commit-[ted] . . . to a slippery slope of judicial intervention into rate making." (Slip Op. at 14).

judgment must prevail." *Id.* at    ,    A.2d at (Slip Op. at 11). On the basis of the foregoing, the Commission's determination on rate of return must be sustained.

Petitioner next challenges as arbitrary and unsupported by the record certain of the Commission's findings as to the proper rate base allowance for working capital. "Cash working capital represents the utility's need for cash to meet current obligations arising out of the rendition of services for which revenues have not yet been received." *UGI Corp. v. Pennsylvania Public Utility Commission,* 49 Pa. Commonwealth Ct. 69, 410 A.2d 923, 929 (1980). However, a determination of a public utility's cash working capital needs depends upon the factual situation presented by each case, *Pittsburgh v. Pennsylvania Public Utility Commission,* 370 Pa. 305, 88 A.2d 59 (1952), and necessarily therefore requires the exercise of sound Commission discretion as the particular facts warrant.

The first contested item is a disallowance of $400,-000 of a claimed minimum bank balance total of $2.9 million. The same issues raised here were considered and resolved against Petitioner in its most recent rate appeal before this Court making further discussion unnecessary. *See Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 47 Pa. Commonwealth Ct. 512, 409 A.2d 446 (1979).

Petitioner also challenges a $550,000 reduction in its claimed working capital to reflect the lag in interest payments to bondholders.[4] "To the extent that the customers are providing revenues before the utility pays its costs, the investors are not supplying the funds to carry on." *Pittsburgh, supra* at 309, 88 A.2d

---

[4] The administrative law judge and the Commission disallowed one-half of the requested claim for accrued interest so as to reflect the fact that bond interest payment in any one month represents only one-half of the annual interest obligation.

at 62. The Commission's decision to disallow this amount is supported by the evidence and will remain undisturbed. The ultimate requirement is of course that the utility have adequate funds to carry it across the lag between rendition of services and receipt of revenues. Petitioner has not demonstrated that the Commission order provides insufficient funds for this purpose.[5]

Petitioner finally argues that certain adjustments to claimed operating expenses and income taxes were arbitrary and not supported by substantial evidence. The first item here concerns the Commission's treatment of substantial income tax refunds received as a result of changes in the calculation of accelerated depreciation for tax purposes. This same issue was fully considered by our Court in *Peoples, supra,* and nothing raised by Petitioner in argument here requires further attention.

The final issue concerns the proper amortization of rate case expenses. Because of the frequency of its rate filings, according to Petitioner one every 1.7 years, it is argued amortization of current expenses and the unamortized balance of prior case expense

---

[5] Petitioner also assails certain Commission adjustments to claimed working capital to reflect the impact of two earlier rate decisions of the Commission. In the first, cash working capital was reduced by $1,667,000 an amount equal to the increase in revenues, net of taxes, approved by the Commission at R.I.D. 308 and the subject of appeal in *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 47 Pa. Commonwealth Ct. 512, 409 A.2d 446 (1979). Because of rate disallowance of $1,525,000 at R.I.D. 205, the Commission added a like amount to Petitioner's cash working capital needs. These adjustments were apparently premised on the Commission's view of the likely final disposition of any appeals. The propriety of these adjustments need not concern us here; since, as previously indicated, the amount of working capital allowed Petitioner has not been shown to be unreasonable, and the net effect of these two adjustments is nevertheless minimal.

should be accomplished over a period of three years rather than the five-year period typically required by the Commission. As we said in *Peoples, supra,* at 530, 409 A.2d at 454 "assigning a useful life of five years for new rates cannot be said to be unreasonable."

Accordingly, we will enter the following

ORDER

AND Now, June 17, 1980, the final order of the Pennsylvania Public Utility Commission at Docket No. R-78010545 adopted October 26, 1978, entered October 27, 1978 (Short Form) and entered February 2, 1979 (Long Form) is hereby affirmed.

———

CONCURRING OPINION BY JUDGE ROGERS:

I concur in the result reached in this case because after reviewing the record I am satisfied that there is sufficient evidence supporting all of the Commission's determinations questioned in this appeal. However, I disagree with the majority's view that *Pennsylvania Public Utility Commission v. Pennsylvania Gas & Water Co.,* Pa. , A.2d (filed February 1, 1980) is authority for upholding the Commission's fair rate of return determination. That case dealt solely with a different subject, the fair value of a utility's property for rate making purposes. The language quoted in the majority's opinion here is the closing sentence of a paragraph the rest of which discusses only the valuation of property. The opening sentence of the opinion in *Pennsylvania Public Utility Commission v. Pennsylvania Gas & Water Co., supra,* with which nothing later appearing is at all inconsistent, explains the scope of the decision:

These two appeals present this Court with the troublesome issue of the correct standard to be employed by the Public Utility Commission (PUC) in fulfilling its legislative mandate to

'ascertain and fix the fair value of the whole or any part of the property of any public utility.'

President Judge CRUMLISH and Judge CRAIG join in this concurring opinion.