Rosemary Mill, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Respondent.

598

Submitted on briefs March 5, 1982, to President Judge CRUMLISH and Judges BLATT and DOYLE, sitting as a panel of three.

*Joseph P. Green, Jr.,* for petitioner.

*Velma A. Boozer,* Assistant Counsel, with her *Shirley Rae Don,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, July 23, 1982:

The petitioner, Rosemary Mill, seeks review of a decision of the Public Utility Commission (PUC) which adopted the order of an administrative law

judge requiring her to make full payment of her monthly electric bills, plus $15 per month installments on past unpaid amounts. The order resulted after a hearing on her complaint that the Philadelphia Electric Company's threats to terminate electrical service to her residence[1] should be postponed under PUC regulations. 52 Pa. Code §§56.111-56.118. She alleges that a physician had certified that an occupant of her home suffered from a serious illness which would be aggravated by a cessation of service.[2]

The administrative law judge found that the medical condition of the petitioner's son would be adversely affected by a termination of service, but he concluded that the tariff provisions of the Public Utility Code (Code), 66 Pa. C. S. §§1303 and 1304 required the petitioner to pay at least the amount of her monthly charges plus a portion of her arrearages, even though, as he recognized at the hearing, she would be unable to meet such a payment schedule during the winter months.[3]

This case involves interpretations of both the Code and the PUC's regulations. Sections 1303 and 1304 of the Code provide in pertinent part:

§1303. Adherence to tariffs.

No public utility shall, directly or indirectly, by any device whatsoever, or in anywise, demand or receive from any person, corporation, municipal corporation a greater or less rate for

---

[1] The public utility's proposed action was prompted by a substantial accumulation of unpaid bills for service provided to the petitioner from 1979-80.

[2] The petitioner's son was a diabetic whose condition, according to a doctor's certification, would be detrimentally affected if service to the residence was terminated.

[3] The order further provided that a failure by the petitioner to adhere to the payment schedule would give Philadelphia Electric Company the right to shut off her service.

any service rendered or to be rendered by such public utility than that specified in the tariffs of such public utility applicable thereto. The rates specified in such tariffs shall be the lawful rates of such public utility until changed, as provided in this part. Any public utility, having more than one rate applicable to service rendered to a patron, shall, after notice of service conditions, compute bills under the rate most advantageous to the patron.

§1304. Discrimination in rates.

No public utility shall, as to rates, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation, or municipal corporation to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to rates, either as between localities or as between classes of service.

The PUC's regulations establish emergency provisions in order to forestall termination of service when such an action would have adverse medical consequences on an occupant of a premises, 52 Pa. Code §§56.111-56.118, and the sections specifically applicable in this situation, 52 Pa. Code §§56.111 and 56.116, provide:

§56.111. General provision.

No utility shall terminate, or refuse to restore service to any premises when any occupant therein is certified by a physician to be seriously ill or affected with a medical condition which will be aggravated by a cessation of service or failure to restore service.

§56.116. Duty of ratepayer to pay bills.

Whenever service is restored or termination postponed pursuant to the medical emergency

procedures, the ratepayer shall retain a duty to equitably arrange to make payment of all bills.

The petitioner contends that the PUC committed an error of law in interpreting 52 Pa. Code §56.116 so as to require her to pay at least the amount of her current monthly charges, and the PUC counters by arguing that its interpretation of Section 56.116 is a correct application of the regulation and is consistent with Sections 1303 and 1304 of the Code which prohibit a utility from altering its rates in order to give a preference to any individual or corporation.

Our scope of review of a PUC adjudication is limited to determining whether or not constitutional rights were violated, an error of law was committed or findings of fact were unsupported by substantial evidence. *West Penn Power Co. v. Pennsylvania Public Utility Commission,* 57 Pa. Commonwealth Ct. 148, 422 A.2d 230 (1980). And here we must conclude that the PUC did commit an error of law in interpreting its regulations as it did.

We cannot agree with the PUC claim that Sections 1303 and 1304 of the Code give it no power to permit the petitioner to pay less than her monthly charges. It is true that Section 1303 prohibits a public utility from demanding or receiving a rate less than that established in the applicable tariff, but Section 1304 modifies that prohibition by providing that a utility shall not grant any *unreasonable* preference or advantage to any person. The clear implication from this language is that a person may be given a rate preference so long as it is not unreasonable; and we believe that it falls to the PUC to determine under what circumstances and in what amounts such a preference would be reasonable.

Under its rulemaking power, Section 501 of the Code, 66 Pa. C. S. §501, the PUC has promulgated

the regulations here concerned so as to give a prefer-
ence to persons who can demonstrate that a medical
emergency exists and that service should consequent-
ly be continued.  Section 52.116 of the regulations,
52 Pa. Code §56.116, makes it clear that a ratepayer
is not relieved of his/her obligation to pay for the
service so received, but it also establishes a system
by which the ratepayer can "equitably arrange to
make payment on all bills." The PUC would have us
read this language as a requirement to make equitable
payments on all *arrearages,* and it is true, of course,
that an administrative agency's interpretation of its
own regulation is entitled to controlling weight.  It is
also true, however, that we may disregard the agency
interpretation if it is shown to be plainly erroneous
or inconsistent with the regulation. *Barr v. Depart-
ment of Public Welfare,* 62 Pa. Commonwealth Ct.
211, 435 A.2d 678 (1981). The regulation here plainly
states that an equitable arrangement may be reached
as to *all bills,* which must necessarily include current
monthly charges, and we must conclude that the PUC
erred in interpreting Section 56.116 to apply only to
arrearages, such an interpretation being inconsistent
with the clear language of the regulation.  It will be
necessary, therefore, for the PUC to reassess the pay-
ment schedule which it previously ordered and to es-
tablish an equitable arrangement for the payment of
all of the petitioner's electrical bills.[4]

We will reverse the order of the PUC and remand
the record for further proceedings consistent with
this opinion.

---

[4] The petitioner is still obligated to pay the full amount of the
electrical charges which she has accrued or will accrue and the
PUC, of course, may not forgive any portion thereof.  We hold only
that the schedule for such payment may be set in a manner which
the PUC considers to be equitable.

### ORDER

AND NOW, this 23rd day of July, 1982, the order of the Pennsylvania Public Utility Commission, in the above-captioned matter is reversed and the record is remanded for further proceedings consistent with the foregoing opinion.

Judge MENCER did not participate in the decision in this case.