United States Steel Corporation, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Walter W. Cohen, Consumer Advocate et al., Intervenors.

Submitted on briefs December 16, 1981, to President Judge CRUMLISH, JR. and Judges BLATT, WILLIAMS, JR., CRAIG and MACPHAIL.

*Henry M. Wick, Jr.,* with him *Charles J. Streiff, Wick, Vuono & Lavelle,* and *J. F. Wilson,* for petitioner.

*Robert A. Christianson,* Assistant Counsel, with him *Steven A. McClaren,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent.

*Walter R. Hall, II,* with him *Susan L. Gordon, Morgan, Lewis & Bockius,* and *Robert M. Jacob,* for intervenor, The Peoples Natural Gas Company.

*Daniel Clearfield,* Assistant Consumer Advocate, with him *Walter W. Cohen,* Consumer Advocate, for intervenor, Walter W. Cohen, Consumer Advocate of Pennsylvania.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., September 21, 1982:

United States Steel Corporation (USS) appeals from a Public Utility Commission (PUC or Commission) order dismissing USS' complaint. We affirm.

This dispute evolves from a PUC short-form order, adopted October 26, 1978, and entered October 27, 1978 (October 27th order) which authorized Peoples Natural Gas Company (Peoples or utility), a natural gas provider, to file tariffs[1] designed to produce total annual operating revenues of $136,610,565.00, resulting in an annual revenue increase of $3,573,974.00.[2] As a prerequisite to the tariff's implementation, Peoples was required to file with the Commission detailed calculations demonstrating compliance with the October 27th order. As directed, Peoples filed Supplement No. 19 to Tariff Gas—Pa. P.U.C. No. 37

---

[1] Basically, the Public Utility Code authorizes public utilities to adopt service rules and regulations. Rules and regulations relating to rates are known as "tariffs". *Stiteler v. Bell Telephone Co. of Pennsylvania,* 32 Pa. Commonwealth Ct. 319, 379 A.2d 339 (1977). *See* "tariff" defined at Section 102 of the Public Utility Code, 66 Pa. C. S. §102.

[2] Initially, Peoples had requested additional annual revenues amounting to $14,287,797.00. The PUC, however, disallowed approximately $10.8 million of the requested increase, resulting in the sanctioned increase of $3,573,974.00. This determination was affirmed by our Court in *Peoples Natural Gas Co. v. Public Utility Commission,* 52 Pa. Commonwealth Ct. 201, 415 A.2d 937 (1980).

(Supplement No. 19) which allegedly delineated a rate structure designed to provide the PUC-sanctioned operating revenues. At a November 21, 1978 public session, the Commission initially approved Supplement No. 19, as recommended by its technical staff which had reviewed the supplement's supporting data following two *ex parte* conferences with the utility. The PUC, by long-form order dated February 2, 1979, gave the tariffs final approval.

On March 20, 1979, USS filed a complaint with the PUC under Section 701 of the Public Utility Code (Code),[3] alleging:

> *First*, that Supplement No. 19 failed to comply with the October 27th order in that the supplement's rates were designed to generate annual revenues in excess of the PUC-approved amount;[4] and

---

[3] 66 Pa. C. S. §701, which provides that:

The commission, or any person, corporation, or municipal corporation having an interest in the subject matter, or any public utility concerned, may complain in writing, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the commission has jurisdiction to administer, or of any regulation or order of the commission. Any public utility, or other person, or corporation likewise may complain of any regulation or order of the commission, which the complainant is or has been required by the commission to observe or carry into effect. The Commonwealth through the Attorney General may be a complainant before the commission in any matter solely as an advocate for the Commonwealth as a consumer of public utility service. The commission may prescribe the form of complaints filed under this section.

[4] USS alleges that Supplement No. 19 was designed to provide the utility with an annual revenue increase of $6,610,210.00, which is $3,036,236.00 in excess of the $3,573,974.00 permitted by the October 27th PUC order.

> *Second*, that Peoples through Supplement No.
> 19, overcharged large volume industrial users.
> by approximately $1,125,000.00.[5]

USS requested the Commission to investigate Peoples' compliance with the October 27th order, to mandate a new tariff filing and to compel a refund of overcharges collected under Supplement No. 19. The PUC referred the matter to an administrative law judge to conduct hearings[6] and, by order entered November 8, 1979, placed on USS the burden of proving that the Supplement No. 19 rates violated the directives of the October 27th order.[7]

At the conclusion of USS' case before the administrative law judge, Peoples orally moved to dismiss the complaint for failure of USS to present evidence

---

[5] Similar complaints were filed by other large volume industrial users: Crucible, Inc., Bethlehem Steel Corporation and Allegheny Ludlum Industries, Inc. These complaints, which were consolidated by the PUC with the instant action, were all subject to Peoples' motion to dismiss. These three complainants, however, have not appealed from the PUC's dismissal of their complaints.

[6] Prior to the completion of the hearings, Peoples filed a motion to dismiss the complaint on April 16, 1979, and argued that USS' complaint was, in fact, a disguised petition for rehearing under Section 703(f) of the Public Utility Code, 66 Pa. C. S. §703(f) (which would have been barred by the 15-day period of limitations), rather than a complaint under Section 701. The PUC, however, held (and we conclude, properly so) that the complaint was not an attempt to relitigate the justness and reasonableness of Peoples' revenues and the underlying bases for those revenues. Rather, the complaint alleged that the implementation of the October 27th order was not accomplished by the rate structure contained in Supplement No. 19.

[7] Specifically, the PUC held that:

> [T]he complainants [here, USS] must bear the burden to prove that the rates being collected pursuant to supplement No. 19 are unjust and unreasonable within the limited context described above.

Public Utility Commission Order, adopted November 1, 1979, and entered November 8, 1979, p. 3.

legally sufficient to sustain the burden of proof imposed by the Commission's November 8, 1979 order. The motion was granted and the PUC affirmed. USS appealed here. Peoples and the Consumer Advocate of Pennsylvania have intervened.

Initially, we note that our scope of review is limited to a determination of whether constitutional rights have been violated or an error of law has been committed, or whether the Commission's findings, determinations or order are supported by substantial evidence. *See Philadelphia Electric Co. v. Public Utility Commission*, 61 Pa. Commonwealth Ct. 325, 433 A.2d 620 (1981).

USS first claims that the Commission erred by imposing the burden of proof on USS, the complainant. We agree that the burden properly rests with the utility;[8] however, we are precluded from considering this error in our determination since USS failed to present this issue before the PUC, thereby waiving any objection.[9]

---

[8] A reading of the pleading clearly indicates that the gravamen of USS' complaint was a *failure* on the part of Peoples *to comply with the provisions of the October 27th order*. The Public Utility Code unequivocally provides that:

> In any case involving an alleged violation by a public utility ... of any lawful ... *order of the commission, the burden of proof shall be on the public utility* ... to show that the ... order of the commission has been complied with.

66 Pa. C. S. §315(b). (Emphasis added.)

[9] A thorough examination of the record reveals that USS did not request a reconsideration of the PUC order of November 8, 1979 (which imposed upon the corporation the burden of proof). Neither did USS, at any time during the proceedings, otherwise object to bearing this burden. The first indication of any dispute regarding the placement of this burden is found in the exceptions filed by *Allegheny Ludlum Industries* (which is *not* a party to this appeal) to the administrative law judge's initial decision dated July 8, 1980. Thus, we will not consider USS' contention for the first

USS next contends that, even if the burden of proof were properly placed, it presented a prima facie case, sufficient to overcome Peoples' motion to dismiss. Section 703(b) of the Code[10] provides in part that: "[t]he commission may dismiss any complaint without a hearing if, in its opinion, a hearing is not necessary in the public interest." The PUC relies on this subsection as one support of its decision to dismiss USS' complaint without the presentation of a rebuttal by Peoples. We disagree.

Section 703(b) clearly vests the Commission with the discretion to hold hearings on a complaint, and a decision to dismiss a complaint without a hearing will be reversed only if there were an abuse of discretion. Where, however, the PUC has *ordered* a hearing, it is an abuse of discretion to terminate that hearing upon completion of the direct case *solely on the basis of section 703(b) discretion*. The PUC seems to argue that USS' direct case and Peoples' rebuttal constituted *separate* "hearings" within the meaning of section 703(b), and that the administrative law judge (and ultimately the Commission) could, in its discretion, dismiss the complaint following USS' direct case without an *additional* hearing (*i.e.*, Peoples' rebuttal). However, we interpret "hearing" as one continuous proceeding that may extend over a sustained period of time, with definite factual and legal issues to be tried, in which all parties involved have a right to be heard. Once the Commission has deemed, in its discretion, to proceed with a hearing on a complaint, generally the PUC must pursue that hearing to its natural termination. Hence, the Commission cannot terminate the hearing after presentment of the direct case *on the*

---

time here unless due cause is shown. The Administrative Agency Law, 2 Pa. C. S. §703(a). Since USS made no such showing, we will not address further the burden of proof issue.

[10] 66 Pa. C. S. §703(b).

*basis of section 703(b) discretion alone.* We are, however, compelled to agree, for a separate reason, that Peoples' motion to dismiss, or motion for compulsory nonsuit,[11] was properly granted.

A compulsory nonsuit motion allows the defendant (Peoples) to test the sufficiency of the plaintiff's (USS) evidence. *See Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978). A nonsuit may be entered only in a clear case, and the plaintiff must be given the benefit of all favorable testimony and every reasonable inference arising therefrom, *see Harasty v. Borough of West Brownsville*, 50 Pa. Commonwealth Ct. 186, 412 A.2d 688 (1980), with all conflicts resolved in the plaintiff's favor. *See Martino v. Great Atlantic and Pacific Tea Co.*, 419 Pa. 229, 213 A.2d 608 (1965).

USS' expert witness, Mr. Edward J. Rager, alleged that the Supplement No. 19 rates achieved a revenue increase 185% greater than that allowed by the October 27th order. A painstaking review of the record, however, reveals that Rager based his testimony on

---

[11] Technically, the availability of a "motion to dismiss" under PUC regulations is limited as follows:

Any party deeming a pleading insufficient in substance, or desiring to question the jurisdition of the Commission, may file with the Commission a *motion to dismiss.*

52 Pa. Code §3.151(a). (Emphasis added.)

Peoples' motion was supported by the allegation that USS presented evidence "legally insufficient to meet the burden of proof which the Commission's order has placed upon [USS] in this proceeding." This resembles, in civil procedure, a motion for compulsory nonsuit for failure to prove a case on which, under the law, a recovery may be had. *See* 6 *Standard Pennsylvania Practice*, Ch. 25, §73 (1960). Although the PUC's procedural rules have no analogue to a motion for compulsory nonsuit, and although the PUC, an administrative agency having quasi-judicial functions, is not governed by rigid procedural rules, we will utilize Pennsylvania civil procedure principles as guidelines in analyzing Peoples' motion to dismiss.

various crucial assumptions regarding possible interpretations of the October 27th order. The witness candidly admitted uncertainty concerning the PUC's intent underlying the order and acknowledged that, if his foundational assumptions were incorrect, his conclusions likewise would be incorrect.[12] Moreover, the mere existence of Rager's alternative interpretation of the October 27th order (resulting in an alternate rate structure) does not, by itself, cast doubt on Supplement No. 19's rates. In light of the burden of proof assumed by USS, and considering the equivocal nature of Rager's testimony and the emphasis placed on his foundational assumptions, we conclude that USS failed to establish a prima facie case and, hence, that Peoples' dismiss motion was granted properly.

USS' final contention (although not entirely clear) appears to center on the propriety of the Commission's February 2, 1979 order which gave final approval of Supplement No. 19. USS seems to argue that it was denied the opportunity to inquire fully into Supplement No. 19 before the supplement's acceptance by the February 2, 1979 PUC order. Although the PUC's technical staff had conferred *ex parte* with Peoples prior to the supplement's approval, USS had the opportunity to participate fully during the rate proceedings, including discovery, evidence presentation and adversary argument. Furthermore, the complaint before us concerns Peoples' alleged *non-compliance* with the Commission's *October 27th order*. Nowhere in the pleading is the propriety of the *February 2,*

---

[12] Q  Mr. Rager, would you agree that if these various assumptions of yours as to the proper interpretation of the Commission's Order could be proved to be wrong that, indeed, your conclusions as stated in your testimony in this proceeding would be wrong?
A  Yes, sir.

1979 order questioned.[13] Hence, we find this claim meritless.

Affirmed.

ORDER

The Pennsylvania Public Utility Commission order, C-79030772 adopted September 18, 1980, and entered October 1, 1980, is hereby affirmed.

Judges BLATT and MACPHAIL dissent.

Judges MENCER and PALLADINO did not participate in the decision in this case.

---

[13] Perhaps the reason that USS did not *directly* contest the February 2, 1979 order (which gave the tariff final approval) is that the time in which to contest the order had elapsed. Section 703(f) of the Code, 66 Pa. C. S. §703, requires that an application for rehearing on a PUC order be filed within *15 days* after the order's service. Further, any appeal from a PUC order must be filed within *30 days* after the order's entry. Pa. R.A.P. 1512(a)(2). Since USS took no action until March 20, 1979 (*46 days* after the order's filing), it was precluded from contesting directly the February 2, 1979 order.