Teltron, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Submitted on briefs June 4, 1984, to Judges ROGERS, COLINS and BARBIERI, sitting as a panel of three.

*Edward C. German*, with him, *Frederick C. Hansel-mann, German, Gallagher & Murtagh*, for petitioner; Of Counsel: *Edward T. Bresnan, Bresnan & Guyer.*

*Barbara S. Kahoe*, Assistant Counsel, with her, *Louise A. Knight*, Deputy Chief Counsel, and *Charles F. Hoffman*, Chief Counsel, for respondent.

*Frederick L. Reigle, Ryan, Russell & McConaghy*, for intervenor, Metropolitan Edison Company.

OPINION BY JUDGE ROGERS, June 28, 1984:

The petitioner, Teltron, Inc. (Teltron), has appealed from an order of the Pennsylvania Public Utility Commission (PUC) dismissing its complaint that Metropolitan Edison Company (Met-Ed) failed to supply it with adequate electric service.[1]

Teltron is a manufacturer of television camera equipment and is a customer of Met-Ed. It sued Met-Ed in the Court of Common Pleas of Berks County. The court transferred the question of the adequacy of Met-Ed's service to PUC and stayed proceedings pending that determination. The Administrative Law Judge who heard the case for the PUC recommended that the complaint be sustained and that Met-Ed be fined, which recommendation the PUC rejected after concluding that Teltron had failed to prove that the inadequacy of its supply of electric voltage was the result of Met-Ed's failure to furnish adequate service.

---

[1] Teltron's complaint in effect was that Met-Ed violated Section 1501 of the Public Utility Code, Act of July 1, 1978, P.L. 598, 66 Pa. C. S. §1501 which provides: "Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions and improvements in or to such service or facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees and the public. . . ."

We may not disturb an order of the PUC unless we determine that constitutional rights were violated, an error of law was committed or necessary findings of fact were not supported by substantial evidence. *Mill v. Pennsylvania Public Utility Commission*, 67 Pa. Commonwealth Ct. 597, 447 A.2d 1100 (1982).

Teltron first contends that the PUC committed an error of law in concluding that it, Teltron, had the burden of proof in this case. It relies, erroneously, on Section 315(c) of the Public Utility Code (Code), Act of July 1, 1978, P.L. 598, 66 Pa. C. S. §315(c) which provides:

(c) Adequacy of services and facilities.— In any proceeding *upon the motion of the commission,* involving the service of facilities of any public utility, the burden of proof to show that the service and facilities involved are adequate, efficient, safe, and reasonable shall be upon the public utility. (Emphasis supplied.)

Since Section 315(c) applies only to proceedings "upon the motion of the commission" and this is not a commission action, Section 315(c) has no application. Section 332(a), providing that "the proponent of a rule or order has the burden of proof," does.

Teltron next complains that material findings of fact made by the PUC are not supported by substantial evidence. The PUC found:

The Respondent [Met-Ed] replaced its voltage regulator on June 18, 1975, and this corresponded to the same date that Teltron's voltage problems ceased. However, the ALJ fails to recognize that the installation of 2 K.V.A. buck transformers by Teltron occurred on or about the same date. The addition of the transformers might well have corrected the voltage problems.

Teltron contends that there is insufficient evidence supporting the finding that it installed several 2 K.V.A. buck transformers on or about June 18, 1975 and that the PUC improperly disregarded competent testimony that the installation of the 2 K.V.A. transformers occurred in July.

Testimony on this issue, however, was conflicting. Teltron's president testified at the first hearing that the transformers were replaced sometime in July; however, at a later hearing during cross-examination, he testified as follows:

Q: Do you recall when you installed the second bank of booster transformers?

A: About two weeks after we installed the first. So I would estimate, sometime in mid-June or towards the end of June.

The PUC's finding is supported by substantial evidence.

Teltron next asserts that the PUC erroneously found that an overloaded Met-Ed transmission line was not a secondary contributing cause of Teltron's voltage problems. We disagree. The evidence was that the allegedly overloaded line was not replaced for almost one year after Teltron's voltage problems ceased. Additionally, there is competent evidence that a voltage reduction on Met-Ed's distribution line, particularly voltage drops of the magnitude complained of by Teltron, would have resulted in noticeable problems to other Met-Ed customers; and that Met-Ed received no service complaints regarding low voltage from any of its other customers.

Teltron finally contends that the PUC erred in finding that the design of Teltron's electrical system does not provide for a balanced load and is therefore not in compliance with Met-Ed's tariff.

There was competent testimony to the effect that low voltage could not have yielded the symptoms complained of, which were voltage surges and drops, with lights dimming and equipment slowing down for fifteen minute durations, but that an internally unbalanced load could have produced this result. Met-Ed's expert witness testified that there was present an internal amperage unbalance. There was also evidence to the effect that low voltage could not have kept the machinery operating for a fifteen minute duration; the circuit breakers would have tripped and the machinery would have shut down. Additionally, the schematic drawings of the internal wiring at the Teltron plant were not produced, nor was the electrical contractor who designed the internal system and chose the load configuration.

Order affirmed.

### ORDER

AND Now, this 28th day of June, 1984, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.