Joseph Barone, Joseph Bianchi, Andrew Genovese, Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

Argued October 15, 1984, before Judges Rogers, Doyle and Colins, sitting as a panel of three.

*Armand E. Olivetti, Jr., Olivetti & Scacchitti,* for petitioners.

*Kandace Foust Melillo,* Assistant Counsel, with her, *Louise A. Knight,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Jack F. Aschinger,* with him, *Carroll F. Purdy, Thomas & Thomas,* Of Counsel: *Robert R. Brittain, Jr.,* for intervenor, Pennsylvania Gas and Water Company.

Opinion by Judge Rogers, December 12, 1984:

Joseph Barone, Joseph Bianchi and Andrew Genovese (petitioners) seek review of an order of the Penn-

sylvania Public Utility Commission (PUC) dismissing their complaints that the Pennsylvania Gas and Water Company (PGW) failed to provide them with adequate water service in violation of Section 1501 of the Public Utility Code (Code), 66 Pa. C. S. §1501.[1]

The petitioners are residents of the 600 block of Jessup Street in the Borough of Dunmore, Pennsylvania and receive domestic water service to their homes from a twenty-four inch PGW water main located in the street. Following a hearing, an Administrative Law Judge found that the pressure in PGW's twenty-four inch main was such that water service provided the petitioners' dwelling houses was inadequate and recommended that PGW be required to make such improvements "as are necessary to provide adequate, safe, reasonable and efficient water service. . . ." The PUC rejected the ALJ's recommendation and dismissed the complaints.

The petitioners, as the proponents of an order, had the burden of proving that PGW was not furnishing adequate, efficient and reasonable water service. Section 332(a) of the Code, 66 Pa. C. S. §332(a), *Teltron, Inc. v. Pennsylvania Public Utility Commission*, 83 Pa. Commonwealth Ct. 407, 477 A.2d 599 (1984). There is no question that they accomplished this by uncontradicted evidence that the water pressure at their residences and five other homes on Jessup Street serviced by PGW's twenty-four inch main was insuf-

---

[1] Section 1501 of the Code, 66 Pa. C. S. §1501 provides, pertinently, that:

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public.

ficient. Mrs. Joseph Bianchi, whose testimony was typical of that of other petitioners, summarized the domestic problems as:

> If I use my washer downstairs, I have no water hardly at all upstairs, etc. You can't take a shower and even if you don't turn the washer on downstairs and you are in the kitchen and turn the water on, you can't get water in the bathroom.

Petitioner Genovese, a former water company employee and a building contractor, testified that the service lines from PGW's twenty-four inch main to their residences are three-fourths of an inch in diameter, that their internal water pipes are one-half inch in diameter and that water pipes of those diameters are commonly used in residences. There was evidence that PGW maintains a normal operating pressure of 35 pounds per square inch gauge (p.s.i.g.) in its twenty-four inch main, that 35 p.s.i.g. is among the lowest pressure in PGW's distribution system, that the customers served by the twenty-four inch main have been complaining of low water pressure for many years and that other residences in the development in which the petitioners live are adequately served by a PGW six-inch water main bearing water pressure of 90 p.s.i.g.

Indeed, it was PGW's position at the hearing, not that the service furnished to the petitioners was adequate, efficient or reasonable, but that their problems might be caused by residual pressure in the three-quarter inch service lines from the curb to their residences. A PGW engineer testified:

> I feel that by installing a larger diameter water service from the main to the home, specifically a one-inch diameter it will result in a higher residual pressure. The residual pressure is the pressure that occurs when faucets

are on, when the toilet's running and by installing a one-inch diameter service line the pressure loss, the friction through that one-inch pipe isn't as great as a three-quarter inch pipe and that would result in the higher residual pressure.

On cross-examination, asked what the pressure would be after the installation of a one inch service pipe (at the petitioners' expense), the engineer testified "I couldn't guarantee you anything." A report prepared by the PUC's Bureau of Safety Compliance was admitted in evidence. This states that the petitioners' poor service "*may* be attributable to the size and length of the service lines as well as the size of the internal piping of the residences." (Emphasis added.)

As noted, the Administrative Law Judge found the service furnished to the petitioners not to be adequate, efficient or reasonable and recommended an order requiring PGW to make improvements necessary to cure the deficiencies. As also noted, the PUC rejected this recommendation.

The PUC found that the water pressure maintained in the twenty-four inch main which services the petitioners is not sufficient "to adequately serve" their residences. It thus concluded that the petitioners had carried their burden of proving that the service furnished them by PGW was not adequate, efficient and reasonable. As we have said, the uncontroverted facts support this conclusion.

The PUC based its decision against the petitioners upon its finding that "the evidence in this case indicates that the low pressures are attributable to the undersizing of the complainants' piping in the residences and not to inadequate pressure at the main." The petitioners having carried their burden of proving that they were furnished inadequate water ser-

vice, it then became PGW's burden to prove that some cause other than the low pressure supplied by its main was the cause of the inadequate service. Its thesis was that the cause was that the three-quarter inch service pipes to the petitioners' residences and their one-half inch internal pipes were undersized. The question therefore is that of whether there is substantial evidence supporting the PUC's finding that the evidence "indicates that the low pressures are attributable to the undersizing of the complainants' piping." As will be recalled, the only evidence to this effect was first, PGW's engineer's "feeling" that the inadequate service might be due to residual pressure in the service lines which might be cured by the petitioners' installing a one inch service line and second, the report of the PUC safety bureau that the losses of pressure may be attributed to the size and length of the service line and the size of the internal piping in the petitioners' residences. We conclude that this evidence is speculative, that it is not substantial evidence supporting the PUC's finding that the cause of the inadequate water service furnished to the petitioners was their own plumbing. We note again that the testimony that the petitioners' service lines and internal piping are of a size commonly used in residences was unrebutted. Also, there is no evidence whatsoever of the length of the service lines serving the petitioners' residences which the PUC found also to be a cause of their inadequate service.

We are constrained therefore to reverse the PUC's order in favor of PGW on the ground that the finding on which it rested was not supported by substantial evidence.

PGW strongly urges that this case must be decided in its favor because the pressure maintained in its twenty-four inch main is greater than the 25 p.s.i.g. minimum required by PUC regulation at 52 Pa. Code

65.6, which we reproduced in the margin.[2]  This contention is misplaced.  The regulation itself says that it is not intended to restrict the authority of the PUC to order improvements where service is inadequate and the PUC correctly notes in its decision that it has power to order needed improvements notwithstanding that the pressure in PGW's main meets the standard of the regulation.

Finally, PGW adduced evidence that it would cost $34,000 to extend their six inch main with 90 p.s.i.g. pressure to Jessup Street.  As noted, their engineer testified that the replacement of the three-quarter inch service lines with one inch lines might solve the problem and that it would cost less.  PGW did not however offer to do this work at its expense, standing on its tariffs imposing responsibility for service lines upon its customers.  Of course, neither we nor the PUC should insist on an uneconomical means of curing the proved inadequacy of service if an efficient economical means is available.  We will therefore remand the record to the PUC for further proceedings and order, with the reminder that the holding of this case is that the PGW has been shown not to be furnishing adequate, efficient and reasonable service to the petitioners and that it is PGW's duty under the

---

[2] 52 Pa. Code §65.6(a) reads:

*Variations in pressure:* The utility shall maintain normal operating pressures of not less than 25 p.s.i.g. nor more than 125 p.s.i.g. at the main. . . .  A utility may undertake to furnish a service which does not comply with the foregoing specifications where compliance with such specifications would prevent it from furnishing adequate service to any customer or where called for by good engineering practices.  The authority of the Commission to require service improvements incorporating standards other than those set forth in this subsection when, after investigation, it determines that such improvements are necessary is not hereby restricted.

400

law of this case to do so, under supervision and regulation by the PUC.

ORDER

AND Now, this 12th day of December, 1984, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is reversed; the matter is remanded for further proceedings and orders of the Commission consistent with this opinion. Jurisdiction is relinquished.