**Walter PAINTER and Donna Painter, on behalf of themselves and all others similarly situated, Petitioners**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 13, 2015.
Decided May 8, 2015.

William S. Stickman, IV, Pittsburgh, for petitioners.

Stanley E. Brown, Assistant Counsel, Harrisburg, for respondent.

Michael W. Hassell, Harrisburg, for intervenor Aqua Pennsylvania, Inc.

BEFORE: DAN PELLEGRINI, President Judge, and RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge.

OPINION BY President Judge DAN PELLEGRINI.

Walter Painter and Donna Painter, on behalf of themselves and all others simi-larly situated (collectively, Customers) petition for review of the order of the Pennsylvania Public Utility Commission (Commission) adopting the Initial Decision of an Administrative Law Judge (ALJ); dismissing Customers' exceptions to the Initial Decision; and dismissing Customers' formal complaint regarding the distribution system improvement charge (DSIC)[1] imposed by Aqua Pennsylvania (Aqua), a provider of water and sewage services. We affirm.

In March 2010, Customers filed a class-action complaint against Aqua in the Lawrence County Court of Common Pleas (trial court) on their behalf and other similar-ly-situated customers alleging that Aqua engaged in unfair trade practices, conversion and breach of contract by imposing the DSIC on a "bills rendered" basis and not a "services rendered" basis.[2] In making their claim, Customers rely upon Supplement No. 88 relating to the computation of the DSIC which states, in relevant part:

> DSIC Surcharge Amount: The charge will be expressed as a percentage carried to two decimal places and will be applied to **the effective portion of the total amount billed** to each customer under the Company's otherwise applicable rates and charges. . . .

(Reproduced Record (R.R.) at 426a) (emphasis added). They argue that this provision requires the surcharge on a "services rendered" basis rather than a "bills rendered" basis. Specifically, Customers alleged that Aqua incorrectly assessed the

---

1. Section 1353(a) of the Public Utility Code (Code) states that "a utility may petition the commission, or the commission, after notice and hearing, may approve the establishment of a [DSIC] to provide for the timely recovery of the reasonable and prudent costs incurred to repair, improve or replace eligible property in order to ensure and maintain adequate, efficient, safe, reliable and reasonable service." 66 Pa.C.S. § 1353(a).

2. As the Commission has explained, "[b]ills calculated under the 'bills-rendered' basis are computed based on the effective tariff rate at the time of the bill. Bills calculated under the 'service-rendered' basis are prorated based on service rendered before and after a tariff rate change." *Implementation of Act 11 of 2012*, (Docket No. M–2012–2293611, filed August 2, 2012), slip op. at 27 n. 3, 2012 WL 3249678.

DSIC by not prorating its application only to utility services rendered after its effective date and by applying it to the entire billed amount, including the portion predating its effective date. Because the case involved a billing dispute, the trial court sustained Aqua's preliminary objections in part and stayed the matter pending the Commission's disposition of whether Aqua's DSIC billing practices violated its tariff.

As a result, in March 2011, Customers filed a formal complaint with the Commission on their behalf and other similarly-situated customers alleging that Aqua engaged in unfair trade practices, conversion and breach of contract and that its DSIC billing practices in place in 2009 violate its tariff. (R.R. 102a–111a). As relief, Customers sought class action status; damages; court costs; attorneys' fees; and a refund under Section 1312(a) of the Code, 66 Pa.C.S. § 1312(a).[3] (*Id.* at 111a). In May 2011, Aqua filed an answer and new matter admitting that, consistent with its tariff, it applies the DSIC on a "bills rendered" basis and adds the DSIC to bills

rendered after the effective date. Aqua also argued that the Commission was without jurisdiction to treat the matter as a class action; adjudicate Customers' unfair trade practice claim; and/or order relief in the form of damages. Customers filed a reply to the new matter. In July 2011, Aqua filed a motion for judgment on the pleadings asking that the complaint be dismissed and Customers filed a brief in opposition.

While this was going on, the Commission issued an opinion and order in *Pettko v. Pennsylvania–American Water Company,* (Docket No. C–2011–2226096, 2013 WL 839971, filed February 28, 2013), dismissing a complaint against Pennsylvania–American Water Company (PAWC) which argued that PAWC was prohibited from billing its DSIC on a "bills rendered" basis. As a result, in May 2013, Aqua filed a motion for summary judgment raising the same claims in its motion for judgment on the pleadings and arguing that the holding in *Pettko* was dispositive of the instant complaint.[4]

---

**3.** Section 1312(a) states, in relevant part, that "[i]f, in any proceeding involving rates, the commission shall determine that any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the commission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the commission shall have the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection...."

**4.** In *Pettko,* the Commission stated the following, in pertinent part:
  With regard to the DSIC, we find our recent order in *Implementation of Act 11 of 2012* to be dispositive. We stated the following specifically in response to comments raised by PAWC, among others:
   The current practice and procedure is for water companies to bill their customers for DSIC on a bills rendered basis. We

note that [Section 6 of] Act 11[, 66 Pa. C.S. § 1358,] directed that the current practices and procedures remain in place for those water companies that have an approved DSIC. [ ]Given this clear statutory mandate and since there is no reason or compelling evidence requiring a change from this requirement, we will modify our determination in the Tentative Implementation Order and direct that all utilities bill their customers for DSIC on a bills rendered basis.
[*Implementation of Act 11 of 2012,* slip op.] at 28. The Complainant has presented us with no facts or argument which shows that the Company is acting in any way contrary to that Order or prior Commission Orders directing the Company to collect the DSIC charge on a bills rendered basis.

   *   *   *

   We also agree with the ALJ's determination that PAWC's treatment of ... DSIC charges on a bills rendered basis does not

The ALJ found that summary judgment was the appropriate vehicle to resolve the matter because the only issue to be decided is the claim that there are incorrect charges on Customers' bill because Aqua applies the DSIC on a "bills rendered" basis and, that there was no genuine issue of material fact. (R.R. at 598a). The ALJ also concluded that, as a matter of law, Aqua's assessment of the DSIC on a "bills rendered" basis was consistent with its tariff and the PUC's rules, regulations and orders and the Public Utility Code. (*Id.* at .602a). Based on the foregoing, the ALJ recommended that summary judgment be granted and Customers' formal complaint be dismissed. (*Id.*).

Customers filed exceptions to the ALJ's decision[5] arguing, *inter alia,* that Supplement 88 to the tariff revising the DSIC requires that there be an "effective date of change" and that it "will be applied to the effective portion of the total amount billed to each customer," (R.R. at 426a), thereby requiring that it be applied on a "services rendered" basis as of the effective date of change.

The Commission denied the exceptions, adopted the ALJ's decision; and dismissed Customers' complaint. The Commission concluded that this case centers on the interpretation of Aqua's tariff and that such is a question of law. The Commission noted that "since 2002, Aqua's DSIC tariff provision has provided, in pertinent part, as follows: '[i]n addition to the net charges provided for in this Tariff, a surcharge ... will apply to *all bills issued* ... on or after' the effective date of the surcharge (emphasis added)." (R.R. at 639a). The Commission concluded that it was proper to grant summary judgment without a hearing because it "ha[d] not identified any facts in the record and/or facts which could be revealed in discovery that would create a disputed issue of material fact necessitating a hearing...." (*Id.* at 643a).

In, this appeal,[6] Customers first argue that Aqua's tariff specifically states

constitute unreasonable discrimination pursuant to Section 1304 of the Code, 66 Pa. C.S. § 1304. We echo the sentiments of the ALJ that the Complainant has not shown that any discrimination in rates has occurred. The ALJ correctly ruled that, to the extent one could find any difference in charges to the Complainant and other similarly situated ratepayers, the differences were *de minimis* at worst, and clearly not unreasonable at all.
*Pettko,* slip op. at 18–19. *See also Implementation of Act 11 of 2012,* slip op. at 27 ("PAWC and Aqua both state that the Tentative Implementation Order's directive that the DSIC becomes applicable to rates for service rendered on or after the effective date of the DSIC is inconsistent with the manner in which the Commission has expressly directed water utilities to implement the DSIC since its inception over fifteen years ago, which is on a 'bills rendered' basis. PAWC notes that when the Commission authorized it to implement its DSIC, at Docket No. P–00961031, the Commission approved a sample tariff with language that provided that 'the DSIC will become effective for bills rendered....' ").

5. As the Commission noted, "[t]he [ALJ's] Initial Decision dismissed the [Customers'] claims raising class action status, monetary damages, the [Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, *as amended,* 73 P.S. §§ 201–1—201–9.3], and attorney's fees for lack of subject matter jurisdiction, and the [Customers] did not except to that portion of the Initial Decision." (R.R. at 632a) (citation omitted). As a result, none of those claims are at issue in the instant appeal. Pa. R.A.P. 1551(a); *Met–Ed Industrial Users Group v. Pennsylvania Public Utility Commission,* 960 A.2d 189, 198–99 (Pa.Cmwlth.2008).

6. This Court's review is limited to determining whether the Commission violated constitutional rights, committed an error of law, rendered a decision that is not supported by substantial evidence, or violated its rules of practice. *United Transportation Union v.*

that DSIC surcharges have a definitive effective date and that its bills state a specific effective date for such surcharges, but Aqua charges the increased rate for usage prior to the effective date in violation of the tariff and Section 1303 of the Public Utility Code, 66 Pa.C.S. § 1303,[7] requiring adherence to tariffs and interpretation of its rates in a manner most favorable to the consumer. Customers contend that the tariff provisions regarding its calculation specifically provide that it "will be applied to the effective portion of the total amounts billed," (R.R. at 426a), thereby showing that it only applies to the proportional period after the DSIC's effective date. Even if the tariff allowed the DSIC to be calculated on a "bills rendered" basis, Customers assert that the Commission's interpretation also violates Section 1304 of the Public Utility Code, 66 Pa.C.S. § 1304,[8] because it treats customers disparately based exclusively on varying billing dates, and while the DSIC is reconciled on a regular basis, there is no mechanism by which the individually aggrieved customers are refunded their pro-rata overcharges.

█ As this Court has explained, "a tariff, like a statute, must be construed so as to give effect to all of its terms, and when the words are clear and free from ambiguity, they are not to be disregarded under the pretext of pursuing its spirit." *PPL Electric Utilities Corp. v. Pennsylvania Public Utility Commission*, 912 A.2d 386, 403 (Pa.Cmwlth.2006).[9] Additionally, as the administrative agency charged with regulating utilities under the Code, the Commission has a particular expertise in interpreting its tariffs and its expert interpretation of such is entitled to great deference and should only be reversed if clearly erroneous. *United States Steel Corporation v. Pennsylvania Public Utility Commission*, 850 A.2d 783, 789 (Pa.Cmwlth.), *appeal denied*, 581 Pa. 687, 863 A.2d 1151 (2004). While there may be more than one plausible interpretation of Aqua's tariff, "we stress from the outset that we may only reverse if the Commission's interpretation was *clearly* erroneous." *Id.* (emphasis in original). Moreover, as the party filing the complaint with the Commission, Customers had the burden of establishing that Aqua's DSIC billing practices violate the terms of its tariff. Section 332(a) of the Code, 66 Pa.C.S. § 332(a);[10] *Aronson v. Pennsylvania Public Utility Commission*, 740 A.2d 1208, 1211 (Pa.Cmwlth.

---

Pennsylvania Public Utility Commission, 68 A.3d 1026, 1032 (Pa.Cmwlth.), *appeal denied*, 622 Pa. 762, 80 A.3d 779 (2013).

7. Section 1303 states, in relevant part:
   No public utility shall, directly or indirectly, ... demand or receive from any person ... a greater or less rate for any service rendered or to be rendered by such public utility than that specified in the tariffs of such public utility applicable thereto. The rates specified in such tariffs shall be the lawful rates of such public utility until changed, as provided in this part. Any public utility, having more than one rate applicable to service rendered to a patron, shall, after notice of service conditions, compute bills under the rate most advantageous to the patron.

8. Section 1304 states, in pertinent part, that "[n]o public utility shall, as to rates, make or grant any unreasonable preference or advantage to any person ... or subject any person ... to any unreasonable prejudice or disadvantage...."

9. *But cf. State Farm Fire & Casualty Company v. PECO*, 54 A.3d 921, 928 (Pa.Super.2012) ("Although tariffs have the 'force and effect of law,' they are not statutes subject to statutory interpretation.").

10. Section 332(a) states, in relevant part, that "the proponent of a rule or order has the burden of proof."

1999), *appeal denied*, 561 Pa. 700, 751 A.2d 193 (2000).

As outlined above, the plain language of Aqua's tariff supports the Commission's conclusion that the DSIC should be applied to Customers' bills on a "bills rendered" basis rather than a "services rendered" basis. Initially, the tariff for Aqua's predecessor provided that the DSIC would be collected on a "service rendered" basis. *See* Supplement No. 34 ("In addition to the net charges provided for in this Tariff, a surcharge of 0.50% will apply to all service ... rendered on or after January 1, 1997.") (R.R. at 391a). However, following an audit in 2000, the Commission noted that Aqua's "Tariff provides for the recognition of each years' over or undercollection in the DSIC rate commencing April 1 of each year" and "that recognition of the actual over or undercollections in the April rate is not possible due to [Aqua]'s application of the DSIC on a service, rather than a bills rendered, basis." (*Id.* at 393a). As a result, since 2002, Aqua's DSIC tariff provision has provided that "[i]n addition to the net charges provided for in this Tariff, a surcharge will apply *to all bills issued* ... on or after" the effective date of the change in the DSIC. (*Id.* at 395a, 397a) (emphasis added).[11] The tariff language upon which Customers rely specifically relates to the amount of the DSIC surcharge and not to its recoupment, (*id.* at 426a), and cannot be used to disregard the express tariff provisions regarding its effective date for billing purposes as outlined above. When read together, all of these tariff provisions show a "bills-rendered" basis for collection of

the DSIC in Aqua's tariff and the Commission's conclusion in this regard is *clearly* not erroneous.

Additionally, as the Commission explained:

> We note that there were valid reasons for the Commission's decision to adopt a "bills-rendered" procedure for the DSIC surcharge. The surcharge only recovers return and depreciation associated with [a] plant that actually is in-service at least one month prior to the effective date of the DSIC rate change. In other words, each quarterly change to Aqua's DSIC rate does not become effective until one to four months after the DSIC-qualified plant has been in service. Therefore, ratepayers receiving an increase to a DSIC surcharge on a "bills rendered" basis will have been receiving the benefit of the DSIC-eligible plant throughout the service period covered by their bills, and for several months prior. Additionally, because the amount to be recovered through the DSIC is fixed, based upon known plant investment incurred prior to the implementation of a new DSIC rate, and because the DSIC is a fully reconciled charge, ratepayers are paying an appropriate annualized level of costs on a 'bills rendered' basis.

(R.R. at 641a n. 4).

The foregoing demonstrates that the "bills rendered" method of applying the DSIC complies with Aqua's tariff and is eminently reasonable and does not result in an unreasonable preference in violation of Section 1304 or an improper application

---

11. In fact, as noted above, Section 1358(a)(2) of the Code specifically provides for the continuation of the Commission's orders since that time regarding the collection of the DSIC. *See* 66 Pa.C.S. § 1358(a)(2) ("All proceedings, orders and other actions of the commission related to a [DSIC] granted to a water utility and all practices and procedures of a water utility operating under a [DSIC] prior to the effective date of this paragraph[, April 16, 2012,] shall remain in effect unless specifically amended or revoked by the commission.").

of rates in violation of Section 1303. *See, e.g., Mill v. Pennsylvania Public Utility Commission,* 67 Pa.Cmwlth. 597, 447 A.2d 1100, 1102 (1982) ("It is true that Section 1303 prohibits a public utility from demanding or receiving a rate less than that established in the applicable tariff, but Section 1304 modifies that prohibition by providing that a utility shall not grant any *unreasonable* preference or advantage to any person. The clear implication from this language is that a person may be given a rate preference so long as it is not unreasonable, and we believe that it falls to the Commission to determine under what circumstances and in what amounts such a preference would be reasonable.") (emphasis in original). In sum, Customers have failed to sustain their burden of proof and the Commission did not err in rejecting their claims in this regard.

Finally, Customers argue that the Commission erred in dismissing the petition without discovery and a hearing on the merits because they are entitled to engage in discovery and conduct depositions under the Code [12] and the Commission's regulations [13] and the failure to provide a hearing on the merits denied Customers due process.

However, Section 703(b) of the Code states, in relevant part, that "[t]he commission may dismiss any complaint without a hearing if, in its opinion, a hear-

ing is not necessary in the public interest." 66 Pa.C.S. § 703(b). [14] "It is a fundamental proposition of law that a hearing or trial procedure is necessary only to resolve disputed questions of fact and is not required to decide questions of law, policy or discretion." *Lehigh Valley Power Committee v. Pennsylvania Public Utility Commission,* 128 Pa.Cmwlth. 259, 563 A.2d 548, 556 (1989). *See also Chester Water Authority v. Pennsylvania Public Utility Commission,* 581 Pa. 640, 868 A.2d 384, 392 (2005) ("[A]s a matter of constitutional due process, an evidentiary hearing is most often implicated where there are material facts in dispute. Here, since the Commission was able to accept the material factual allegations of the authority's protest as true, a due process hearing was not essential, and the use of the procedure for judgment on the pleadings relative to the protest was not inappropriate.").

The instant case exclusively involved the interpretation of the terms of Aqua's tariff; Aqua admitted that it applied the DSIC on a "bills rendered" basis; and Customers do not allege that any of the factual allegations raised in the complaint are in dispute. (*See* R.R. at 105a–106a). As a result, Customers' due process rights were not violated by the Commission's failure to permit them to conduct discovery or to take depositions or conduct a hearing, or

---

**12.** Section 333(b) of the Code states, in relevant part, that "[a] party to a proceeding shall be able to take depositions of witnesses upon oral examination or written questions for purposes of discovering relevant, unprivileged information...." 66 Pa.C.S. § 333(b).

**13.** Section 5.331(a) of the Commission's regulations states, in relevant part that "[a] party to the Commission proceeding may conduct discovery." 52 Pa.Code § 5.331(a).

**14.** The Commission's dismissal of a complaint without a hearing will be reversed only if

there was abuse of discretion. *United States Steel Corporation v. Pennsylvania Public Utility Commission,* 69 Pa.Cmwlth. 134, 450 A.2d 1073, 1076 (1982). " 'An abuse of discretion is not merely an error in judgment;' rather, '[a]n abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will.' " *Global Tel*Link Corp. v. Department of Corrections,* 109 A.3d 809, 817 n. 15 (Pa.Cmwlth.2015) (citation omitted).

by its disposing of the instant complaint on summary judgment.

Accordingly, for the foregoing reasons, the Commission's order is affirmed.

### ORDER

AND NOW, this *8th* day of *May*, 2015, the order of the Pennsylvania Public Utility Commission dated May 22, 2014, at No. C–2011–2239556, is affirmed.