568 A.2d 276

**David M. BARASCH, Consumer Advocate, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1989.

Decided Dec. 22, 1989.

Christine M. Maloni, Harrisburg, with her, Pamela Bishop Sarvey and Scott J. Rubin, Asst. Consumer Advocates, and David M. Barasch, Consumer Advocate, for petitioner.

Kevin J. Moody, Asst. Counsel, with him, Bohdan R. Pankiw, Deputy Chief Counsel, Harrisburg, and John F. Povilaitis, Chief Counsel, for respondent.

Anthony C. Lomma, Scranton, for intervenors, Rivercrest Public Service Water Corp., Elmbrook Water Co. and Hamilton Water Co.

Gregory R. Neuhauser, with him, Thomas J. Sniscak, Malatesta, Hawke & McKeon, Harrisburg, for amici curiae, Pennsylvania Rural Water Ass'n and Rural Sewer Utilities Group.

Before CRAIG, BARRY and COLINS, JJ.

## OPINION

BARRY, Judge.

The Office of Consumer Advocate (Consumer Advocate) has petitioned this Court to review orders of the Pennsylvania Public Utility Commission (PUC) granting general rate increases to three water utilities. The Consumer Advocate submits that the procedural treatment of these three water rate cases before the PUC constituted violations of due process as guaranteed by the U.S. Constitution and provisions of the law of this Commonwealth delegating to the PUC administrative authority to consider the general rate increases sought by utilities. We find that the procedural treatment of these cases constituted an infraction of our law. We do not pass on the question of whether there has

been a violation of the U.S. Constitution. We also do not pass on the question of whether the PUC's potential adoption of the settlement negotiated among the parties here would inevitably result in impermissible interim ratemaking. There being no final order adopting the parties' joint settlement proposal, we conclude that this question is not ripe for our disposition at this time.

The Consumer Advocate's petitions in each of the three water rate cases were consolidated for argument and disposition by this Court. In addition to the water companies, the PUC, and the Consumer Advocate, we have entertained briefing, argument, and post argument submissions by the Pennsylvania Rural Water Association and Rural Sewer Utilities Group as *amici curiae*.

The three water companies, Elmbrook Water Company (Elmbrook), Hamilton Water Company (Hamilton) and Rivercrest Public Service Water Corporation (Rivercrest), each filed a general rate increase case with the PUC in 1988. Elmbrook sought a 7.25% increase in annual revenues, Hamilton requested a 9.7% increase, and Rivercrest made its case for a 16.3% increase. All these companies are wholly owned subsidiaries of National Utilities, Inc. of Scranton, the owner of several other water and sewer utilities throughout Pennsylvania.

The Consumer Advocate challenged these rate increases and, in the case of Rivercrest, twenty-nine formal complaints were also lodged by individual ratepayers.

The PUC granted the rate increases sought by Elmbrook and Hamilton respectively in orders issued on October 28, 1988. The PUC similarly issued an order on November 7, 1988 retroactively instituting the rate increase sought by Rivercrest effective October 8, 1988. In each of these orders the PUC indicated that its investigation and analysis of the tariff filing and supporting data as presented by the water companies resulted in a conclusion that the rates sought were not unjust or unlawful. However, in each of its opinions while the PUC acknowledged the complaints lodged against the tariff filings, it indicated that its decision

to permit the new tariffs to take effect did not include a determination as to the validity of these complaints. Consequently, the PUC stated that its examination of each of these complaints would proceed after the rate increases were in effect. Rivercrest was issued an order to show cause, and with respect to Elmbrook and Hamilton, the Consumer Advocate invoked the right to maintain a challenge to the new rates pursuant to the provisions of the PUC's own orders in those two cases.

Subsequent consolidation of these three general rate increase cases with those of seven other National Utilities Inc. subsidiaries pending before the PUC has generated a settlement between the Consumer Advocate and the water companies. The result is an accord providing for mutually agreeable rates which was filed with a PUC administrative law judge on February 1, 1989. If adopted by the PUC, these rates would constitute the acceptable general rate increase sought by the water companies. The rates provided by the settlement agreement are lower than those ordered into effect by the PUC; the latter rates continue to be collected as of the argument of this matter before this Court.

The question now before this Court is whether the PUC adhered to the provisions of the law which enable the PUC to award general rate increases to public utilities and which dictate the manner in which such a tariff is to be considered. Specifically, 66 Pa.S. § 1308(d) gives the PUC authority to grant general rate increases and it stipulates the procedural posture in which such authority may be exercised. The statute in pertinent part reads:

(d) General rate increases.—Whenever there is filed with the commission by any public utility described in paragraph (1)(i), (ii), (vi) or (vii) of the definition of "public utility" in section 102 (relating to definitions), and such other public utility as the commission may by rule or regulation direct, any tariff stating a new rate which constitutes a general rate increase, the commission shall promptly enter into an investigation and analysis of said

tariff filing and may by order setting forth its reasons therefor, upon complaint or upon its own motion, upon reasonable notice, enter upon a hearing concerning the lawfulness of such rate, and the commission may, at any time by vote of a majority of the members of the commission serving in accordance with law, permit such tariff to become effective. . . .

The PUC argues that its treatment of these general rate increase cases comports with the discretionary latitude afforded it in this statute. The PUC submits that the legislature, in empowering the Commission to regulate the rates charged by utilities, conferred upon the Commission such discretion that it could consider rate increase requests responsively, and so it could act with an appreciation of the varying significance these requests have for the diverse operations of our state's numerous utilities. What is more, the Commission avers that while it must promptly enter into an investigation and analysis of general rate increase tariff filings prior to exercising its statutory authority to permit rate increases to become effective, the duty to hold hearings on formal complaints challenging the rate increases and raising reasonable grounds for investigation is nowise negated if these proceedings are after the effective date of the increase. We must disagree.

Our Supreme Court has considered the meaning of this statutory provision and we believe that inquiry pertinent to the resolution of this action. When making its inquiry, the Supreme Court was similarly faced as we are here with contentions that the PUC had abridged constitutional rights to due process. That Court decided in *Joseph Horne Co. v. Pennsylvania Public Utility Commission*, 506 Pa. 475, 485 A.2d 1105 (1984), that 66 Pa.S. § 1308(d) complies with both U.S. and Commonwealth traditional notions of fundamental fairness.

The instruction provided in *Horne* by the Supreme Court is clear. In order to dispel the likelihood of any ambiguity in the meaning of this statute, to ensure that safeguards against denial of due process exist, and to effectuate the

legislature's intent to prohibit interim ratemaking, the Supreme Court has concluded that:

> Section 1308(d) now provides that general rate filings will be suspended unless the PUC allows the rate to become effective and then only by majority vote "upon reasonable notice, [and] upon a hearing concerning the lawfulness of such rate."

*Horne,* 506 Pa. at 484–485, 485 A.2d at 1110.

We find that this interpretation applies with equal force to the present matter. While in *Horne* our Supreme Court was addressing the invalidity of the "option order procedure" in use at that time by the PUC, we find no factual distinction here that would make inapposite the interpretation of 66 Pa.S. § 1308 enunciated in *Horne.* Before us are three water companies seeking general rate increases and several complainants challenging those requests for rate increases. The *Horne* interpretation makes plain that complainants are entitled to notice and hearing. The complainants here, whose interests are being championed by the Consumer Advocate, have been denied such a hearing. We therefore hold that the orders of the PUC granting the general rate increases are invalid.

Since we find these orders invalid, we note that we need not decide the issue raised by the Consumer Advocate questioning whether the PUC may set general rates retroactively. Likewise, because of our having already invalidated these orders, we decline to address the Consumer Advocate's contention that the PUC has impermissibly relied upon undisclosed evidence to substantiate the determinations reflected in those orders.

The PUC argues that this Court should abide by the principles of those cases which held that, under former 66 Pa.S. § 1148(b), the Commission enjoyed the confidence of the legislature through the grant of more extensive discretion than that afforded by the new statute as interpreted in *Horne.* We must reject that contention: the old law is no longer the law.

We now remark on the argument offered by Rivercrest that because its general rate increase was sought to offset its loan obligations under the Pennsylvania Infrastructure Investment Authority's program, its general rate increase request should be considered as having been initiated pursuant to the provisions of 32 Pa.S. § 7518. On the record presented for our review we are unable to assess the legitimacy of this argument and therefore we refrain from exploring the interaction between 66 Pa.S. § 1308 and 32 Pa.S. § 7518 which a resolution of this argument would necessarily require.

Amici Curiae have asked this Court to look upon the finality of the instant orders as we had those in our deliberation of the issues presented in *Vanmetre v. Unemployment Compensation Board of Review*, 128 Pa.Commonwealth Ct. 644, 564 A.2d 540 (1989). In *Vanmetre* we followed our Supreme Court's lead in returning to the strict definition of a final order, namely that an order is final and appealable only if it puts an aggrieved party "out of court". *See Wall v. Wall*, 517 Pa. 29, 534 A.2d 465 (1987), *Sweener v. First Baptist Church of Emporium*, 516 Pa. 534, 533 A.2d 998 (1987). We believe that our decision in the cases here under review will readily permit the application of this strict standard in the inevitable challenges to come against similar general rate applications.

Finally, we comment that when the determination is made that rates are just, lawful and reasonable and may be levied upon ratepayers, that order is final. It is surely final following our conclusion today that, before any determination of general rates by the PUC, an opportunity for complainants to be heard must be provided. There should be no confusion that an order of the PUC fixing general rates is a final disposition of the interests of the parties to such a proceeding. Furthermore, there can be no doubt that an opportunity to be heard after due notice must be given to the affected parties before the PUC may enter an order fixing general rates.

## ORDER

NOW, December 22, 1989, the orders of the Pennsylvania Public Utility Commission at R–881052 entered November 7, 1988, R–881095 entered October 28, 1988, and R–881096 entered October 28, 1988 are vacated and remanded in order that the Commission provide adequate notice to and an opportunity for the complainants in these matters to be heard.

Jurisdiction relinquished.