F. Donald Zucker, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent; The Bell Telephone Company of Pennsylvania, Intervenor.

Argued February 7, 1979, before President Judge Bowman and Judges Crumlish, Jr., Mencer, Blatt,

DiSalle, Craig and MacPhail. Judges Wilkinson, Jr. and Rogers did not participate.

*F. Donald Zucker,* petitioner, for himself.

*Charles F. Hoffman,* Assistant Counsel, with him *Daniel F. Joella,* Deputy Chief Counsel, and *Kathleen Herzog Larkin,* Chief Counsel, for respondent.

*Daniel J. Whelan,* with him *Donald F. Clarke,* for intervenor.

Opinion by Judge Crumlish, Jr., June 5, 1979:

F. Donald Zucker (Zucker), a customer of the Bell Telephone Company of Pennsylvania (Bell), has filed a petition for review in this Court from a final order of the Pennsylvania Public Utility Commission (Commission) which retained the 50 cent charge for private telephone number service to Zucker.[1]

Zucker's complaint was considered by Commission as part of proposed revised tariffs filed by Bell. He contends that the Commission has erred in three respects by (1) failing to require Bell to meet its statu-

---

[1] Private telephone number service is an optional service provided by Bell to telephone subscribers whereby the name, address, and telephone number of a subscriber is omitted from Bell's published telephone directory.

tory burden of proof requirement; (2) allowing Bell to discriminatorily create a class of subscribers subject to an unjust and unreasonable rate; and (3) exceeding its authority by sanctioning the unlisted charge as a deterrent to the exercise of individual choice to telephone privacy.

This Court's scope of review in rate making cases is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether findings, determinations or order of the Public Utility Commission are not supported by substantial evidence. *United States Steel Corp. v. Pennsylvania Public Utility Commission,* 37 Pa. Commonwealth Ct. 195, 390 A.2d 849 (1978).

Considering Zucker's first argument: Section 312 of the Public Utility Law[2] (Law) put the burden of proof on the public utility to show that the rate involved is just and reasonable where there is a complaint involving any *proposed* rate increases. Here, the challenge is to the propriety of the charge first instituted as part of a general rate increase approved by the Commission in a final order of December 14, 1971. Thus, Zucker's challenge is not within the statutory language of Section 312. The proceeding is not on motion of the Commission, nor does the complaint challenge a proposed rate increase since the 50 cent charge has been in effect five years[3]; and no *increase* of the charge was proposed in the general rate increase filed on November 5, 1976. Rather, Zucker is shouldered with the burden to establish an unjust or

---

[2] Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §1152. The former Public Utility Law has since been repealed by the Act of July 1, 1978, P.L. 598; a similar provision is now found in the Public Utility Code, 66 Pa.C.S. §315.

[3] Bell unsuccessfully attempted to increase the charge for private number telephone service in a general rate increase filed November 15, 1974.

unreasonable charge for telephone service. *United States Steel Corp. v. Pennsylvania Public Utility Commission*, 37 Pa. Commonwealth Ct. 173, 390 A.2d 865 (1978); *Deitch Co. v. Pennsylvania Public Utility Commission*, 204 Pa. Superior Ct. 102, 203 A.2d 515 (1964). Bell met and carried its burden of proof in the 1971 rate increase; the burden is now upon Zucker to prove that the charge is no longer reasonable. Considering the substance of this burden, Section 1112 of the Law[4] provided:

> Whenever the commission shall make any rule, regulation, finding, determination, or order under the provisions of this act, the same shall be prima facie evidence of the facts found, and shall remain conclusive upon all parties affected thereby, unless set aside, annulled, or modified on judicial review.

This provision obtains added significance because of a prior Commission order at R.I.D. 196 decided in 1976 wherein Zucker was a party whose similar objections were dismissed. There, the Commission decided that the 50 cent charge was reasonable considering the costly special procedures employed by Bell in furnishing the requested private telephone number service. Unless Zucker demonstrates recent significant changes in circumstances in the interim since 1976, prima facie evidence of the facts found in the prior order controls.

Zucker sought to prove that the charge was unreasonable by cross-examining a Bell rate structure witness and eliciting the following testimony:

1. The initial 1971 and subsequent 1976 decisions levied a charge bottomed on the substantiated position that there was a substantial value and concomitant cost in providing the service.

---

[4] 66 P.S. §1442; a similar provision is now found in the Public Utility Code, 66 Pa.C.S. §316.

2. The initial charge for a private unlisted number was 50 cents in 1971 and to date has remained unchanged.

3. Twenty-six independent telephone companies in Pennsylvania have similar rates.

4. The average private telephone number charge for the entire Bell system is 99 cents per month.

5. There are approximately 650,000 Bell customers who subscribe to the private number service.

6. Any time a telephone user requires directory assistance the cost to Bell is approximately 25 cents per call.

We are unpersuaded that Zucker has succeeded in proving that the 50 cent monthly charge for the private telephone number service is unreasonable. To the contrary, we believe it is both reasonable and is supported by substantial record evidence. Bell, by withholding certain customers' telephone numbers from its published directory provides a valued service to those customers beyond the standard service furnished most of its customers. Aside from the direct costs Bell incurs in withholding the number from publication (*i.e.*, customer negotiation, emergency call procedures), the substantial number of increased directory assistance calls to Bell results in a large indirect cost resulting from the failure of callers to locate by routine directory inspection the party of their search. The Commission's order of April 4, 1978, found that the cost of operator involvement for each directory assistance call is approximately 25 cents, of which only 10 cents is recovered if the calling party utilizes directory assistance more than thrice in a billing month.[5] That Pennsylvania Bell's charge for unlisted

---

[5] The Commission has authorized Bell to levy a ten cents per call charge on each subscriber who calls for directory assistance more than three times per billing month within the caller's own area code.

telephone number and service is approximately one-half the average amount charged for the same service in the remainder of the Bell system and matches charges made by 26 other non-Bell system telephone companies in Pennsylvania supports Bell's contention that its 50 cent charge is reasonable.

Zucker presses the argument that since Bell has failed to quantify the exact cost it incurs in furnishing a subscriber with a private telephone number listing, and has failed to produce a specific cost-of-service study, that its rate is therefore unreasonable; its exact cost being uncertain. Cost-of-service studies are a widely used and generally accepted standard used by utilities in allocating costs of a service among customers, but there are factors which may warrant departure from strict adherence to the objective cost-of-service standard. In a prior similar Bell rate case at R.I.D. 196, the Commission in its order of June 30, 1976, wrote:

[T]his Commission will not take the position of condemning any proposed rate structure not fully substantiated by a cost of service study. We believe that the existing rates reasonably reflect a combination of the costs incurred by respondent in consideration of the special procedures required to provide the service and the value of the service to those customers who prefer not to have the number listed in respondent's telephone directory. Costs are incurred by this special type of service which should not be ignored nor should they be borne by other customers who do not require this service.

This is a sound legal position and the rate set is well within the "flexible limit of judgment" afforded the Commission. *See United States Steel Corp., supra,* 37 Pa. Commonwealth Ct. at 205, 390 A.2d at 855. Moreover, we shall not dislodge the Commission's

findings in deference to the time honored proposition that the reasonableness of rates is an administrative or factual question which will not be disturbed if it is supported by competent evidence. *Philadelphia Suburban Transportation Co. v. Pennsylvania Public Utility Commission,* 3 Pa. Commonwealth Ct. 184, 192, 281 A.2d 179, 185 (1971).

We turn now to Zucker's second contention which is that Bell subjects its private number service subscribers to unreasonable prejudice and disadvantage by unreasonably and discriminatorily creating a class of subscribers upon which an unreasonable rate is levied in violation of Section 304 of the Act.[6] The basis of this contention is that the additional costs incurred by Bell in providing a private listing service are attributable mainly to a small portion of unlisted subscribers who receive emergency calls.[7] Zucker, who alleges he has never received an emergency call, argues that he is obliged to pay for other unlisted subscribers' emergency calls. He errs in two respects; he mistakenly argues: (1) that the cost of providing private number listings is comprised in great part of the high cost of emergency calls to subscribers with unlisted numbers; and (2) the increase in directory assistance costs caused by inquiries for unlisted subscribers numbers is paid by the caller (see Footnote No. 5), so that just as the burden of paying for directory assistance calls is borne by those customers who, in using the service, pay the 10 cents per call charge, so too should the burden of paying for emergency calls be put upon the benefiting unlisted subscribers.

Zucker fails to see that there are many costs which comprise the total unlisted subscriber bill, only one of

---

[6] 66 P.S. §1144; a similar provision is now found in the Public Utility Code, 66 Pa. C.S. §1304.

[7] Approximately 16% of unpublished number subscribers receive emergency calls. (R.I.D. No. 196, Resp. St. No. 11, p. 20)

214

which is the emergency call procedure. For example, Bell's Exhibit No. 15A tells us that each one of these queries costs the company 25 cents, of which only 10 cents is recouped but only *if* the caller has utilized the three free call allotment. Moreover, he fails to see that every subscriber with an unlisted number benefits from the emergency call procedures, whether or not he is ever called. That Zucker has never enjoyed this service does not mean Bell was not equipped to so supply it. It is obvious that service personnel must be hired and trained in special procedures to provide this valuable service to every unlisted subscriber.

Reasonable classification of service of rates is not prohibited under Section 304 and is properly within the discretion of the Commission. *Deitch, supra,* 204 Pa. Superior Ct. at 109, 203 A.2d at 519. The 10 cent charge on directory assistance callers to help absorb the increased costs directly attributable to their calls is one of those exercises of discretion and does not require that the same type of procedure be employed to charge emergency call recipients for these costs. Customer classifications and attending rate differences may be justified by a variety of considerations including the quantity of service used, the nature of the use, the time of the use, the pattern of the use, differences of conditions of service or cost of service. *Philadelphia Suburban Transportation Co., supra,* 3 Pa. Commonwealth Ct. at 197, 281 A.2d at 186. The Act merely requires that the rates for one class of service shall not be unreasonably prejudicial and disadvantageous to any other class of service. *United States Steel Corp., supra,* 37 Pa. Commonwealth Ct. at 203, 390 A.2d at 854. We conclude that charging an additional fee for the class of customers who prefer to have their number unpublished is a reasonable decision and comports to the requirements of Section 304. There is adequate substantial evidence in the record to conclude

that each and every private number service customer increases the total cost of providing the service to all of subscribing Bell customers.

Zucker's final contention, that the Commission's consideration of the adverse impact of charging a lower rate for private number service based upon directory assistance costs constitutes an unconstitutional detraction from a subscriber's right to privacy, is specious on its face and merits no extended discussion except as follows in passing.

In conclusion, we are constrained to observe by way of elaboration of our reasoning that it was entirely proper that one of the factors considered by the Commission when it approved the 50 cent monthly charge was an intention to avoid a sharp increase in the number of customers requesting an unpublished number and the concomitant increase in directory assistance costs. If a *de minimus* rate were charged for the optional service, the great surge in customers requesting the service would result in a burgeoning of directory assistance costs which must necessarily be shared by all Bell customers. The present rate properly puts the burden on these customers who benefit most from it. While some customers no doubt are in fact deterred from requesting this special service because of the additional cost to them, the purpose is not to diminish right to privacy but to prevent the costs from becoming unwieldy and impose a burden on all regular customers. The practical effect of setting rate structures to benefit the largest number of customers was emphasized by this Court's decision in *Philadelphia Suburban Transportation Co., supra,* 3 Pa. Commonwealth Ct. at 197, 281 A.2d at 186, wherein we stated:

Rate structure must be based on the hard economic facts of life and on a complete and thorough knowledge and understanding of all the facts and circumstances which affect rates and

216

services; and the rates must be designed to furnish the most efficient and satisfactory service at the lowest reasonable price for the greatest number of customers, i.e., the public generally.

We reiterate that the establishment of a rate structure is an administrative function peculiarly within the expertise of the Commission. We find no infirmities with the rate set for private telephone number service by the Commission and will not disturb its order.

Accordingly, we

ORDER

AND Now, this 5th day of June, 1979, the order of the Public Utility Commission at Docket No. C.22258 entered April 4, 1978, is hereby affirmed.