576 A.2d 1167

**KIRKWOOD PARTNERSHIP, Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1990.

Decided June 15, 1990.

John A. VanLuvanee, Eastburn and Gray, Doylestown, for petitioner.

Kathryn G. Sophy, Asst. Counsel, with her, Bohdan R. Pankiw, First Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, for respondent.

D. Mark Thomas, Thomas & Thomas, Harrisburg, with him, Brenden E. Brett and Richard Hale Pratt, Pratt, Brett, Thome & Lyons, P.C., Doylestown, for intervenor, Indian Rock, Water Co.

Before COLINS, PALLADINO and McGINLEY, JJ.

COLINS, Judge.

Kirkwood Partnership (petitioner) petitions for review of an order of the Pennsylvania Public Utility Commission (Commission), allowing Indian Rock Water Company (Indian Rock) to collect from petitioner, income tax liability arising from contributions in aid of construction (CIAC), as part of the facilities necessary to provide water service to petitioner's development.

On September 29, 1987, petitioner filed a complaint with the Commission against Indian Rock, alleging that in order to obtain water service from Indian Rock for petitioner's new development, petitioner entered into an agreement to

provide Indian Rock with CIAC. These contributions are usually made in the form of either money or physical utility plan, given by a developer to a utility, as an incentive to extend service to the new development. Although such contributions formerly were excludable from gross income, the Tax Reform Act of 1986 (TRA–86), required that they now be included as gross income taxable to the utility.

Indian Rock, therefore, included the CIAC-related tax liability as an expense chargeable to servicing petitioner's development. Petitioner, however, in its complaint against Indian Rock, contends that Indian Rock's tariff language does not authorize charging petitioner for the utility's CIAC-related tax liability. On October 20, 1987, Indian Rock filed its answer to petitioner's complaint, stating that the amount of Indian Rock's tax liability, charged to petitioner as part of the overhead in constructing the water main extension for petitioner's development, was both required by TRA–86 and authorized by Indian Rock's tariff language.

An initial hearing was held on February 24, 1988, where no testimony was taken because the parties represented that settlement was imminent. Upon the failure of settlement negotiations, subsequent hearings were held on July 21, 1988 and September 7, 1988, before an Administrative Law Judge (ALJ), at which time petitioner and Indian Rock, respectively, presented witnesses. On March 1, 1989, the ALJ issued his decision, concluding that Indian Rock's tariff language did not permit it to collect CIAC-related income tax from petitioner, and ordering Indian Rock to refund to petitioner the amount it had collected for this tax plus interest.

On March 14, 1989, Indian Rock filed exceptions to the ALJ's decision. Subsequently, in an order dated August 4, 1989, the Commission: (1) dismissed petitioner's complaint; (2) granted Indian Rock's exceptions; (3) found that Indian Rock's tariff language did allow it to recover CIAC-related income tax liability from petitioner as part of the project's "overhead;" and (4) held that Indian Rock's chosen method-

ology for computing this amount was acceptable. On August 21, 1989, petitioner filed the petition for review presently before this Court.

We must determine whether substantial evidence in the record supports the Commission's fact-findings; and, whether the Commission committed an error of law in ruling that Indian Rock's tariff language allows it to recover from petitioner income tax costs arising from petitioner's contributions in aid of construction, and to calculate said costs without offsetting Indian Rock's future tax savings.

■ Our scope of review of a Commission's final order is limited to determinations as to violations of constitutional rights, errors of law and whether findings are supported by substantial evidence. *Allied Development and Building Corporation v. Pennsylvania Public Utility Commission*, 60 Pa. Commonwealth Ct. 207, 430 A.2d 1239 (1981).

Petitioner argues that no substantial evidence of record exists to support the Commission's factfindings and that the Commission erred at law in concluding that Indian Rock's tariff language permits it to recover from petitioner those income tax costs resulting from contributions in aid of construction. Petitioner contends that the only taxes reasonably emanating from the cost of extending public utility improvements are payroll, property and sales taxes, and that income tax liability results solely from receiving money or its equivalent, not from constructing improvements to public utility systems. Pennsylvania P.U.C., Uniform System of Accounts for Water Utilities (1948) and Sueflow, Public Utility Accounting: Theory and Application (1973). Accordingly, petitioner argues that Indian Rock had no authority to charge petitioner for income tax liability arising from "funds supplied to construct physical property," and that doing so violated Section 1303 of the Public Utility Code (Code).[1] In support of its argument, petitioner points

1. 66 Pa.C.S. § 1303, provides in pertinent part:

No public utility shall, directly or indirectly, by any device whatsoever or in anywise, demand or receive from any person, corporation, or municipal corporation a greater or less rate for any service

out that case law traditionally requires a utility to bear the costs of repairs and improvements because of its duty to provide reasonable and adequate service and, at most, requires a developer to share, rather than be responsible for all costs. *Fairview Water Co. v. Pennsylvania Public Utility Commission*, 55 Pa. Commonwealth Ct. 96, 422 A.2d 1209 (1980); *McCormick v. Pennsylvania Public Utility Commission*, 48 Pa. Commonwealth Ct. 384, 409 A.2d 962 (1980). Petitioner further maintains that the Commission's order violates Section 1308 of the Code which requires that, before new costs may be imposed, notice and hearing be provided.[2] Petitioner argues that the Commission's finding in favor of Indian Rock directly contravenes precedent and would impose upon new customers all costs of providing them utility service.

In rebutting petitioner's arguments, Indian Rock contends that substantial evidence of record supports the Commission's factfindings and its subsequent conclusion that the tariff language neither limits nor restricts specific items that may be charged to a developer, as long as these costs are directly related to the facilities needed to serve the development. Furthermore, Indian Rock maintains that the Commission's order does not violate Section 1303 of the Code in determining that the utility tariff language included income taxes within the definition of construction overhead, and by permitting Indian Rock to recover the amount of cash equal to: "(a) the estimated cost of extension ... and (b) the estimated cost of any other facilities which the Company shall have decided are required to render ade-

rendered or to be rendered by such public utility than that specified in the tariffs of such public utility applicable thereto.

**2.** 66 Pa.C.S. § 1308, provides in pertinent part:
(a) *General Rule.*—Unless the commission otherwise orders, no public utility shall make any change in any existing and duly established rate, except after 60 days notice to the commission, which notice shall plainly state the changes proposed to be made in the rates then in force, and the time when the changed rates will go into effect. The public utility shall also give such notice of the proposed changes to other interested persons as the commission in its discretion may direct.

quate service...." [3]   More specifically, Indian Rock points to Paragraph 58 of Indian Rock Tariff No. 1 for authority to charge, not only actual costs, but also increased income tax liability, directly attributable to the utility's construction of main extensions.[4]   As to petitioner's allegation that the Commission's order violated Section 1308 of the Code, Indian Rock argues that this section addresses rate changes and that, in the present case, no rates were changed.   The utility simply charged what the tariff allowed—the actual cost of the extension.

After consideration of the arguments of petitioner and the Commission, the Court must affirm the Commission's order if supported by substantial evidence.   *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission*, 79 Pa. Commonwealth Ct. 445, 470 A.2d 654 (1984).   "Unless the [Commission's] decision does not bear a real and substantial relationship to the regulatory objects sought to be obtained by it, that judgment must prevail."   *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co.*, 492 Pa. 326, 339, 424 A.2d 1213, 1220 (1980), *cert. denied*, 454 U.S. 824, 102 S.Ct. 112, 70 L.Ed.2d 97 (1981).   We find that substantial evidence of record supports the Commission's factfindings that CIAC-related tax costs were incurred by Indian Rock as a result of the development project.   Furthermore, the Commission did not err at law when it ruled that Indian Rock's tariff allowed it to recover these CIAC tax costs from the developer.   This Court has repeatedly held that a public utility is entitled to recover "those operating expenses reasonably necessary to provide service to customers, while earning a fair rate of return on the investment in plant used and useful in providing adequate utility service."   *Western Pennsylvania Water Co. v. Pennsylvania Public Utility*

3.   Indian Rock Tariff No. 1, "Main Extension" provisions, Extension Deposit Agreement, pp. 17–19.

4.   Indian Rock Tariff No. 1, Paragraph 58, provides in pertinent part: "All estimated or actual costs of figures referred to in the 'Extension Deposit Agreement' shall include reasonable allowance for overhead costs, including office, engineering and field inspection time."

*Commission,* 54 Pa. Commonwealth Ct. 187, 190, 422 A.2d 906, 908 (1980). Clearly, denying a utility the recovery of a proper and necessarily incurred expense, as in the present case of tax liability, diminishes the utility's return on investment. Accordingly, in the case before us, the Commission correctly found that Indian Rock's tariff language intended that the contributor of a CIAC, such as the present petitioner, bear the costs arising from its own project (i.e., legitimate and actual costs of extension, including tax liability) from which it will ultimately benefit.

As to whether the Commission erred in not requiring Indian Rock to offset future tax savings when calculating CIAC-related tax liability chargeable to petitioner, petitioner contends that the Commission's upholding Indian Rock's CIAC income tax gross-up methodology, where it was implemented prior to being approved, constituted an error of law. Petitioner further argues that the Commission erred in not requiring Indian Rock to refund to petitioner the value of future tax savings, thereby imposing a charge in excess of "actual taxes paid" and creating a discriminatory rate in violation of Section 1304 of the Code.[5]

Indian Rock, on the other hand, argues that CIAC is taxable in the tax year received, and that tax liability incurred thereon is not offset by tax benefits from future depreciation. Accordingly, Indian Rock maintains that it must receive *full* gross-up from petitioner to reflect its current tax liability on the contribution; otherwise, it will have inadequate cash from petitioner to meet the *actual* taxes due and payable on the contribution.

After examining the record, we must affirm the Commission's order in support of Indian Rock's use of

---

5.  66 Pa.C.S. § 1304, provides in pertinent part:

    No public utility shall, as to rates, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation or municipal corporation to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to rates, either as between localities or as between classes of service.

gross-up, methodology in calculating the amount of CIAC-related taxes collectible from petitioner. Determination of an appropriate rate structure for allocating the cost of Indian Rock's service among its customers is an administrative matter, and "one of policy for the regulatory body concerning which the judicial branch is not warranted in interposing economic theories." *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Company*, 492 Pa. 326, 339, 424 A.2d 1213, 1220.

Before determining that a gross-up methodology was the most appropriate for use by Indian Rock, the Commission reviewed six possible rate-making methods within the context of the following factors: (1) ease of administration for small companies; (2) the cash flow problem for small water companies that would be created by a non-gross-up methodology, because of the time delay between current tax liability and future depreciation; and (3) sheltering current rate payers, especially since petitioner testified that the gross-up cost had already been included in the cost of the homes in the development. The Commission concluded that the gross-up methodology not only required simpler record-keeping, but also allowed Indian Rock to collect from petitioner the amount of tax due and payable, in conformance with the "actual taxes paid" principle. Even more controlling, however, was the Commission's intent to approve a methodology that would protect Indian Rock's present customers from excessive tax liability, while at the same time ensuring that future tax savings would accrue to the benefit of the customers. "The essence of public utility regulation is the protection of the public and the assurance of adequate service to them at reasonable rates on the one hand, and, on the other, a fair opportunity to the utility to secure a reasonable rate...." *Id.*, 492 Pa. at 333, 424 A.2d at 1217. This was a balancing task successfully performed by the Commission, and we, accordingly, affirm its order.

## ORDER

AND NOW, this 15th day of June, 1990, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.

CRUMLISH, former President Judge, did not participate in the decision in this case.