629 A.2d 189

**John L. SCHELLHAMMER and Irwin A. Popowsky, Consumer Advocate of Pennsylvania, Petitioners,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 10, 1993.

Decided July 12, 1993.

---

Dianne E. Dusman, Asst. Consumer Advocate, for petitioners.

Kevin J. Moody, Asst. Counsel, for respondent.

Before DOYLE and PELLEGRINI, JJ., and KELTON, Senior Judge.

PELLEGRINI, Judge.

John Schellhammer and Irwin A. Popowsky, Consumer Advocate of Pennsylvania (collectively, Petitioners) petition for review the order of the Pennsylvania Public Utility Commission (PUC) dismissing their complaint and holding that the existing rates of the Waymart Water Company (Waymart) were not shown to be unjust, unreasonable or unlawful.

On April 30, 1990, Waymart filed Supplement 16 to Tariff Water—Pa.P.U.C. No. 4 proposing a rate increase to produce

$72,667 in additional annual revenue, or a 59% increase in operating revenue. On the same day, Waymart also notified their customers of the proposed rate increase and the proposed effective date of June 29, 1990. The letter stated that the total bill for a typical residential customer would increase by approximately 83%.[1]

Schellhammer, a Waymart customer, contacted the PUC to inquire about protesting the rate increase. He received a packet of information, including a "Formal Complaint" form with an affidavit form and information about formal complaints and the complaint process.[2]

On June 4, 1990, Schellhammer sent to the Bureau of Consumer Services a letter and a petition signed by 160 residents, objecting to the rate increases because the increases would cause hardship to the many customers on fixed incomes, and Waymart intended to exempt the Salvation Army, its largest customer, from the increases. The letter ended with

1. The letter informed customers that: "Consumers are entitled to file a formal complaint against the proposed increase and to participate in hearings. Formal complaint forms are available from the [PUC].... All complaints should be filed with the PUC before the proposed effective date of the rate increase." (R.R. 5a).

2. The PUC information stated:

 The filing of a formal complaint involves a legal proceeding before a [PUC] Administrative Law Judge.... You and the utility will be required to present facts in a trial-type hearing before the Administrative Law Judge (ALJ) on the issues you have raised in your complaint. You may wish to file a formal complaint for one of the following reasons:
 ....
 You wish to *intervene* in a rate case investigation when a company is asking for an increase in its rates. Consumers who file a formal complaint intend to *actively* take part in all hearings which the PUC may hold on the rate increase request. Normally, these participants may cross-exam the company's witnesses and present their own witnesses.
 If your basic purpose is to *inform* the PUC of your objections to a rate increase and/or your interest in appearing as a witness in any hearing held by the PUC, you do not need to file a formal complaint. Write a letter to the PUC as an objection to the rate increase. If you wish to appear as a witness, please note that in your letter.
 (R.R. 66a–71a). (Emphasis in original). The information also discussed whether an attorney was required and gave instructions on how to fill out the enclosed formal complaint form and affidavit.

the request: "We earnestly solicit your intervention in arriving at an equitable disposition of this matter."

The PUC initiated an internal investigation of the proposed rate increase. After the PUC's investigators determined that a smaller rate increase was appropriate, the PUC held a public meeting on June 28, 1990, and issued an "option order". The option order directed Waymart to file a proposed change which would increase rates by $67,479 (instead of the $72,677 proposed by Supplement 16) and the proposal "shall be permitted to become effective".[3] Waymart then filed Supplement 18 pursuant to the option order proposing the lower rate increase. Supplement 18 had a proposed effective date of July 10, 1990, and as of that date, the PUC terminated its investigation of Waymart's rates.

Schellhammer was not notified of the internal investigation or of the June 28 hearing or order. Upon learning of the new rate increase, Schellhammer sent a letter to the Bureau of Consumer Services questioning the PUC's lack of response to his letter of June 4, 1990.[4] The PUC did not respond immediately to this second letter and, on July 30, 1990, Schellhammer filed a "Formal Complaint" form objecting to the rate increase and requesting the PUC to reverse the increase. The Consumer Advocate then intervened in the complaint against Waymart and requested that the PUC amend or rescind its order of June 28, 1990, because it had not properly responded to Schellhammer's June 4 letter.

An Administrative Law Judge (ALJ) heard the complaint and determined that Petitioners had the burden of proof on the lawfulness, justness and reasonableness of the rates set forth in Supplement 18, because the rates were "existing" at

3. If Waymart chose not to submit a new proposal, further investigation and hearings would be instituted on the original proposal and the effective date of Supplement 16 would be suspended until January 29, 1990.

4. In this second letter, Schellhammer referred to his first letter as a petition "informally protesting" the proposed rate increase and asked that the PUC promptly reply so that consideration could be given to "filing a formal protest within the requisite thirty-day period." (R.R. 29a–30a).

the time of the complaint and the previous letter from Schellhammer was not a complaint. The ALJ then determined that the rates were unjust and unreasonable and directed a decrease and refunds. Both parties filed objections to the ALJ decision.

On the objections from the ALJ decision, the PUC found that the rates were just and reasonable. The PUC also found that Schellhammer's letter of June 4, 1990, was not a "complaint" entitling him to notice and a hearing before the PUC issued the order on the proposed rates, because it did not state that it was a formal complaint or request a hearing or include an affidavit. The PUC further found that the ALJ correctly placed the burden of proof on Petitioners because complainants always have the burden when challenging existing rates, such as the rates in Supplement 18 which became legal when it determined that they could be levied on the ratepayers. Petitioners then filed this petition for review of the PUC order.[5]

## I.

Petitioners now contend that the June 4, 1990 letter was a formal complaint requiring notice and a hearing before the PUC's June 28, 1990 order, and that because notice and a hearing was not provided, the June 28 order is void. Petitioners argue that the letter was a formal complaint because the Public Utility Code requires only a written complaint containing certain information and not that the form prescribed by the PUC be used to submit a "formal complaint". The PUC contends only a formal complaint initiates a hearing, and that the June 4 letter was not a formal complaint, because no verification was attached as required by the regulations and the letter did not indicate that it was meant as a formal complaint.

5. Our scope of review in rate-making cases is limited to determining whether constitutional rights have been violated, an error of law has been committed, or whether the findings of fact are unsupported by substantial evidence. *Cup v. Pennsylvania Public Utility Commission,* 124 Pa.Commonwealth Ct. 291, 556 A.2d 470 (1989).

Section 1308(d) of the Public Utility Code (Code), 66 Pa.C.S. § 1308(d), provides the procedures required on a general rate increase:

> Whenever there is filed with the commission by any public utility ... any tariff stating a new rate which constitutes a general rate increase, the commission shall promptly enter into an investigation and analysis of said tariff filing and may by order setting forth its reasons therefor, upon complaint or upon its own motion, upon reasonable notice, enter upon a hearing concerning the lawfulness of such rate, and the commission may, at any time by vote of a majority of the members of the commission serving in accordance with law, permit such tariff to become effective.

In Section 701 of the Code, 66 Pa.C.S. § 701, the General Assembly stated that any person with an interest in the subject matter "may complain in writing, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the commission has jurisdiction to administer, or of any regulation or order of the commission." Section 701 of the Code also directed the PUC to "prescribe the form" of complaints. Thereafter, Section 703(a) of the Code, 66 Pa.C.S. § 703(a), mandates that unless a complaint is satisfied or settled and where reasonable ground exists for investigating the complaint, the PUC must hold a hearing on the complaint.[6]

■ Because Section 701 expressly allows the PUC in its regulations to prescribe the form of the complaints that initiate the notice and hearing procedure in Section 703, the PUC is within its regulatory powers to require that a writing from any person complaining about the actions or omissions of a public utility be a formal complaint before a duty arises to

6. Section 703(d) of the Code also allows the PUC to provide informal hearings as needed. This section shows an intention of the General Assembly that there be separate informal proceedings where there is no requirement for notice and hearing. However, Petitioners do not contend that the June 4 letter was an informal complaint.

provide a hearing.[7]

Having decided that only "formal complaints" if on reasonable grounds require the hearing procedures mandated in Sections 703 and 1308(d) of the Code, we turn to the question of whether Schellhammer's letter of June 4, 1990, was a "formal complaint" under the regulations. As directed by Section 701 of the Code, the PUC regulations prescribe the contents of the "formal complaint" in 52 Pa.Code § 5.22 and provide an official form in 52 Pa.Code § 3.551(10). The official form states that the complaint must be attested in the form prescribed by 52 Pa.Code § 1.36 which defines verification as "a signed written statement of fact supported by oath or affirmation" and gives an official form for affidavits.

Schellhammer's June 4, 1990 letter is not on the official form for formal complaints which was provided to him by the PUC nor did it state that it was a "complaint" or attach a verification. Although Petitioners contend that the letter contains in paragraph form all of the information required by 52 Pa.Code § 5.22, that in itself is not enough. Unlike the official form, the June 4 letter does not notify the PUC that Schellhammer intended to file a formal complaint or expected to be a party to a formal hearing. Moreover, Schellhammer did not attach an affidavit in the form specified in 52 Pa.Code § 1.36 nor any other type of verification. Schellhammer had adequate notice from the notification letter from Waymart and from the information he received from the PUC that the regulations require an affidavit to be attached to the formal complaint form in order to initiate the hearing process. Be-

7. This court has recognized that it is "formal complaints" that are entitled to notice and hearing under Section 1308(d). *Barasch v. Pennsylvania Public Utility Commission*, 130 Pa.Commonwealth Ct. 299, 568 A.2d 276 (1989) (holding that the duty to hold hearings on formal complaints raising reasonable grounds must be met before the PUC allows the general rate increase to become effective), *petition for allowance of appeal denied*, 525 Pa. 659, 582 A.2d 325 (1990). *See also Joseph Horne Co. v. Pennsylvania Public Utility Commission*, 506 Pa. 475, 485 A.2d 1105 (1984) (invalidating temporary rate increases which become effective rates under the option order procedure pending final consideration of a formal complaint against a proposed general rate increase).

cause Schellhammer's letter failed to notify the PUC that it was intended to be a formal complaint and because he failed to comply with the regulations by not attaching a verification, the PUC did not err in concluding that the June 4, 1990 letter was not a formal complaint and the PUC order of June 28, 1990, was valid.[8]

## II.

Petitioners also contend that whether or not the option order is valid, the burden of proof was improperly placed on the complainants because the PUC had, in fact, not determined the justness and reasonableness of the optional rates proposed in Supplement 18 by Waymart.

 Public utility rates are required to be just and reasonable by Section 1301 of the Code, 66 Pa.C.S. § 1301. "Where a customer is heard to complain concerning a proposed change in rate, the burden of proof is upon the public utility to show the proposed rate is just and reasonable; where the complaint involves an existing rate, however, the burden falls upon the customer to prove that the charge is no longer reasonable." *Cup*, 124 Pa.Commonwealth Ct. at 296, 556 A.2d at 472. *See also Brockway Glass Co. v. Pennsylvania Public Utility Commission*, 63 Pa.Commonwealth Ct. 238, 437 A.2d 1067 (1981); *Zucker v. Pennsylvania Public Utility Commission*, 43 Pa.Commonwealth Ct. 207, 401 A.2d 1377 (1979).[9]

8. The PUC filed a Motion to Quash Petitioners' appeal from the June 28, 1990 order contending that Schellhammer waived his right to appeal that order by filing a formal complaint rather than an appeal to the rate increase within 30 days. Having decided that the June 4 letter was not a formal complaint and does not affect the June 28 order, we need not further address the Motion to Quash.

9. This rule is stated in Sections 332(a) and 315(a) of the Code, 66 Pa.C.S. §§ 332(a), 315(a). In general, the burden of proof is on "the proponent of a rule or order" pursuant to Section 332(a), except as otherwise provided in Section 315(a) which provides:

In any proceeding upon the motion of the commission, involving any proposed or existing rate of any public utility, or in any proceedings *upon complaint involving any proposed increase in rates*, the burden of

■ In the proceedings before the ALJ on Petitioners' formal complaint of July 30, 1990, the ALJ decided that the complained of rate was an "existing" rate and, therefore, the complainants or Petitioners had the burden of proof. We agree. The PUC had indicated in its order of June 28, 1990, that if proposed by a new tariff supplement, a rate increase of $67,479 would be considered just and reasonable based on their initial investigation of the higher rate increase in Supplement 16. After receiving Supplement 18 and determining that it complied with the June 28 order, the PUC allowed the rate increase to become effective on July 10, 1990, thereby establishing that as indicated in the prior order, it determined that the lower rate increase in Supplement 18 was just and reasonable. After these determinations and after the rate increase was in effect, a customer filing a formal complaint has the burden of proof to show that the rates are no longer reasonable. *Cup.*

Accordingly, the decision of the PUC that Petitioners did not meet their burden of proof and dismissing the formal complaint is affirmed.

## ORDER

AND NOW, this 12th day of July, 1993, the orders of the Pennsylvania Public Utility Commission dated June 28, 1990, and April 16, 1992, Nos. R–901697 and C–903013, respectively, are affirmed. The Motion to Quash is dismissed.

proof to show that the rate involved is just and reasonable shall be upon the public utility.

Therefore, where the proceedings were brought on the complaint of a customer, the burden is on the public utility only if the rate is "proposed".