**DUQUESNE LIGHT COMPANY,**
**Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**TOWNSHIP OF FINDLAY, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**WEST PENN POWER COMPANY,**
**Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 12, 1997.
Decided July 22, 1998.

Daniel P. Delaney, Harrisburg, and Larry R. Crayne, Pittsburgh, for petitioner, Duquesne Light Co.

Patricia Krise Burket, Harrisburg, for respondent.

Before COLINS, President Judge, and McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY, FLAHERTY and LEADBETTER, JJ.

LEADBETTER, Judge.

These are consolidated appeals taken from a final order of the Pennsylvania Public Utility Commission. The order dismissed a complaint filed by the Township of Findlay without a formal hearing. By the complaint, the Township sought a means to obtain lower cost electric service in the Township. We remand.

In 1993, the Township of Findlay (Township) filed a formal complaint on its behalf and on behalf of its residents against Duquesne Light Company (Duquesne) and West Penn Power Company (West Penn) with the Pennsylvania Public Utility Commission (Commission). Duquesne provides electric service within the Township; neighboring communities are served by West Penn. By its complaint, the Township sought an order from the Commission directing Duquesne and West Penn to show cause why 1) West Penn should not be required to offer service to the residents of the Township; or 2) Duquesne should not be required to establish tariffs setting reasonable rates to "wheel"[1] power to end users in the Township; or 3) Duquesne should not be required to offer for sale to the residents of the Township electricity at the same price which Duquesne pro-

---

**1.** "Wheeling" is the movement of electricity on the transmission system of one utility for another entity. *West Penn Power Co. v. Pennsylvania Pub.* *Util. Comm'n,* 659 A.2d 1055, 1059 n. 5 (Pa. Cmwlth.1995).

posed to·sell electricity to certain companies within General Public Utilities (GPU). The Township complained that Duquesne receives a rate for electric service that is more than twice the amount paid by residents of adjoining communities served by West Penn and that Duquesne offers reduced rates to select customers. On December 29, 1993, the Office of Consumer Advocate (OCA)[2] filed a notice of intervention.[3] On January 10, 1994, Duquesne and West Penn individually answered the complaint and moved to dismiss. Duquesne asserted several grounds for dismissal, including lack of representational standing, lack of Commission authority to mandate "retail wheeling"[4] under the Public Utility Code (Code), 66 Pa.C.S. §§ 101—3316, and public policy. West Penn argued that the Township had no right to demand service from West Penn absent a Commission order altering the existing service territories. After hearing arguments on the motions to dismiss, an administrative law judge (ALJ) certified material questions to the Commission pertaining to whether the Code (as it existed prior to the December, 1996 amendments) conferred upon the Commission authority to mandate retail wheeling.

By order entered August· 31, 1994, the Commission recognized that substantial pressure existed in the Commonwealth and nationwide to permit increased competition among electric utilities as a means of lowering rates. The Commission identified the Township's complaint seeking competition in retail sales as the first of its kind before the Commission, with others expected to follow. It was precisely in this context that the Commission initiated its *Investigation Into Electric Power Competition* (*Investigation*)[5] on May 10, 1994. The Commission concluded that it was unwise to attempt to resolve retail wheeling issues on a case-by-case basis due to the complex technical, policy and legal issues involved. Accordingly, the Commission "suspended and/or severed" the retail wheeling issues from the complaint pending a final determination in the *Investigation.* The Commission further directed the development of the record in this proceeding on the remaining issues, namely: whether the Township has standing to bring the complaint on behalf of its residents, or only on its own behalf as an electric customer of Duquesne; whether there should be changes in the certificated service territories of Duquesne and West Penn for the provision of service within the Township by West Penn; and whether Duquesne could provide service at lower rates, similar to the discounts given to certain customers who threaten to leave Duquesne's system. The Commission observed: "[I]t is reasonable, appropriate and in the public interest to direct the presiding ALJ to proceed with the evidentiary hearings to develop a clear, coherent and complete record culminating in the issuance of an Initial Decision." Opinion and Order, August 31, 1994, at 12.

On February 2, 1995, the second prehearing conference was held. At this hearing, the Township clarified that it was not seeking an order that would remove the Township from Duquesne's service territory, rather it was seeking an order that would expand West Penn's service territory such that Duquesne and West Penn would have overlapping certificated service territories within the Township. The Township also withdrew its request concerning rates proposed for GPU companies in favor of receiv-

**2.** The Consumer Advocate is appointed by the Attorney General to represent the interests of consumers before the Commission. Section 902–A of Administrative Code of 1929, P.L. 177, *as amended,* 71 P.S. § 309–2(a); Section 201(b) of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, 71 P.S. § 732–201(b).

**3.** Subsequently, notices of intervention were also filed by the Office of Small Business Advocate (OSBA), Allegheny Electric Cooperative, Inc., and the Pennsylvania Rural Electric Association. The OSBA represents the interest of small business consumers before the Commission. Section 3 of Act of Dec. 21, 1988, P.L. 1871, 73 P.S. § 399.42.

**4.** Retail wheeling (one of the types of wheeling) is the transmission of electricity by a utility from another generation source to one of the utility's customers. The wheeled electricity supplants the direct retail service previously provided by the utility. *Findlay Township v. Duquesne Light Co. and West Penn Power Co.,* Pennsylvania Public Utility Commission, Docket No. C–00935374, Order entered August 31, 1994 at p. 8 n. 2.

**5.** Commission Docket No. I–00940032.

ing the discounts Duquesne gives to certain customers who threaten to leave the system. Following this prehearing conference, the Township submitted a joinder signed by 232 individuals having either an ownership or leasehold interest in the Township and using electricity supplied by Duquesne.

By initial decision issued September 21, 1995, without having held a hearing, the ALJ concluded that the Township had the necessary standing to prosecute the complaint against Duquesne in its own name and on behalf of its citizens, residents and taxpayers. However, the ALJ dismissed the complaint for lack of jurisdiction to order West Penn to extend its service beyond the boundaries of its certificated service territory so as to provide public electric service within the Township. The ALJ noted that West Penn had not made an application to service the new area. Duquesne and the Township filed exceptions to the initial decision. One of the exceptions raised by the Township was that the complaint was dismissed without entry of an order clarifying the status of the "severed and/or suspended" retail wheeling issues raised by the complaint.[6]

On September 4, 1996, in a split decision, the Commission addressed the complaint in its entirety, including the retail wheeling issues.[7] The Commission determined that the interests of administrative efficiency required the Township to be granted representational standing to prosecute the complaint and that the Commission possessed substantial implied authority to reach the merits of the complaint. Nevertheless, the Commission concluded that "substantial public policy considerations ... counsel against using Commission authority which would produce the result of introducing competition in the municipality of Findlay...." Opinion and Order, September 4, 1996, at 18. Thus, the

Commission entered an order which states in pertinent part:

**IT IS ORDERED;**

1. That the Formal Complaint of Findlay Township, be, and is, hereby, **DISMISSED**, . . . .

2. That the Initial Decision of the presiding ALJ concerning his recommendation with respect to jurisdiction of this Commission to entertain the instant Formal Complaint of Findlay Township is reversed. . . .

3. That the Initial Decision of the presiding ALJ concerning his grant of standing to Findlay Township to prosecute this action in a representative capacity is, hereby, affirmed. . . .

Order, September 4, 1996. The Township, Duquesne and West Penn petitioned this Court to review the Commission's order. Petitioners also filed notices of intervention in each other's appeals. This Court sua sponte ordered consolidation of the three petitions. Various motions challenging each petition for review are pending before this Court.[8]

Subsequent to entry of the order appealed from, on December 3, 1996, the General Assembly amended the Code by adding the "Electricity Generation Customer Choice and Competition Act"[9] (Act), establishing standards and procedures to restructure the electric utility industry in an effort to control the cost of generating electricity in Pennsylvania. The Act provides that electric generation will no longer be a regulated monopoly service in Pennsylvania as of January 1, 2001. 66 Pa. C.S. § 2806(a). Transition to competitive markets will be accomplished through phased implementation scheduled to begin by January 1, 1999. *Id.* at § 2806(b). At present, the Commission is authorized to approve pro-

---

6. Apparently, no separate proceeding was docketed for resolution of the retail wheeling issues.

7. By this time, the *Investigation* had been completed. On July 3, 1996, the Commission transmitted a report and recommendation on the *Investigation* to the Honorable Thomas J. Ridge, Governor, and the General Assembly of the Commonwealth of Pennsylvania. Order at 13, n.5. However, as noted below, the resulting legislation had not yet been enacted.

8. The Commission moves to quash or dismiss Duquesne's and West Penn's petitions for lack of standing and the Township's petition as moot. The Township moves to dismiss Duquesne's petition. Duquesne moves to strike portions of the Township's petition and moves to quash West Penn's appeal on waiver grounds.

9. 66 Pa.C.S. §§ 2801—2813.

posals for Retail Access Pilot Programs. *Id.* at § 2806(g). Retail Access Pilot Programs are experimental customer choice programs proposed by electric utilities, approved by the Commission, and designed to determine whether all customer classes of an electric utility can benefit from competitive markets. *Id.*

The Township's complaint was filed pursuant to Section 701 of the Code, which provides in pertinent part:

> The commission, or any person, corporation, or municipal corporation having an interest in the subject matter, or any public utility concerned, may complain in writing, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the commission has jurisdiction to administer, or of any regulation or order of the commission.

66 Pa.C.S. § 701.

The basic theory of the Township's complaint is that Duquesne has made management decisions concerning investment in nuclear generating stations which have caused inefficient generation of electricity which, in turn, has resulted in foisting unreasonable rates for electric service upon a captive customer group. Complaint, para. 9—11. In contrast, according to the complaint, West Penn provides "fair and reasonable pricing." Complaint, para. 12. The Township places great emphasis on the rate differential between Duquesne and West Penn in requesting that West Penn be required to offer service to the Township. Indeed, other than price, no complaint about Duquesne's electric service has been raised. Therefore, the "act or thing done or omitted to be done" by the defendant utilities may fairly be identified as Duquesne's alleged failure to provide reasonable rates and/or retail wheeling and West Penn's alleged failure to offer service to the Township.

There is no question that, "Under the police power, the Commonwealth, through its agent the Public Utility Commission, can reasonably supervise and regulate the business of public utility companies for the purpose of securing to the public adequate service at fair and reasonable rates." P.L.E. Public

Utilities § 3 (footnotes omitted); *see also Duquesne Light Co. v. Borough of Monroeville,* 449 Pa. 573, 298 A.2d 252 (1972). The essence of public utility regulation is the protection of the public and the assurance of adequate service to them at reasonable rates on the one hand, and, on the other, a fair opportunity to the utility to secure a reasonable rate. *Kirkwood Partnership v. Pennsylvania Pub. Util. Comm'n,* 133 Pa.Cmwlth. 478, 576 A.2d 1167, 1171 (1990).

Public utility rates are required to be just and reasonable by Section 1301 of the Code. 66 Pa.C.S. § 1301; *Schellhammer v. Pennsylvania Pub. Util. Comm'n,* 157 Pa.Cmwlth. 86, 629 A.2d 189, 193 (1993). The Commission is the forum for the adjudication of rates, services and facilities of public utilities within the Commonwealth. *Duquesne Light Co.,* 449 Pa. at 581, 298 A.2d at 257. The overriding principle governing the Commission's performance of its duty is to determine just and reasonable rates. *Pennsylvania Pub. Util. Comm'n v. Pennsylvania Gas & Water Co.,* 492 Pa. 326, 337, 424 A.2d 1213, 1219 (1980), *cert. denied, Pennsylvania Gas & Water Co. v. Pennsylvania Pub. Util. Comm'n,* 454 U.S. 824, 102 S.Ct. 112, 70 L.Ed.2d 97 (1981).

■ A public utility customer may challenge an existing rate by filing a complaint with the Commission. *See Zucker v. Pennsylvania Pub. Util. Comm'n,* 43 Pa.Cmwlth. 207, 401 A.2d 1377, 1379 (1979). The reasonableness of rates is an administrative or factual question. *Id.* 401 A.2d at 1381. Where a customer is heard to complain concerning an existing rate, there is a strong presumption that the preexisting Commission approved rates are just and reasonable. *Popowsky v. Pennsylvania Pub. Util. Comm'n,* 669 A.2d 1029, 1037 n. 14 (Pa.Cmwlth.1995), *rev'd in part on other grounds,* 550 Pa. 449, 706 A.2d 1197 (1997). The burden falls upon the customer to prove that the charge is no longer reasonable, by demonstrating "recent significant changes in circumstances in the interim." *Zucker,* 401 A.2d at 1379–80; *Schellhammer.* The absence of such a showing establishes prima facie evidence of the

facts found in the prior order. *Id.; see also* 66 Pa.C.S. § 316.

■ Section 703 of the Code provides:

(a) Satisfaction of complaint or hearing.— If ... reasonable ground exists for investigating such complaint, it shall be the duty of the commission to fix a time and place for a hearing.

(b) Notice of hearing.—The commission shall fix the time and place of hearing ..., if any is required, and shall serve notice thereof upon the parties in interest. The commission may dismiss any complaint without a hearing if, in its opinion, a hearing is not necessary in the public interest.

66 Pa.C.S. § 703. As we have noted, "Section 703(b) clearly vests the Commission with the discretion to hold hearings on a complaint, and a decision to dismiss a complaint without a hearing will be reversed only if there [was] an abuse of discretion." *U.S. Steel Corp. v. Pennsylvania Pub. Util. Comm'n,* 69 Pa.Cmwlth. 134, 450 A.2d 1073, 1076 (1982). *See also West Penn Power Co. v. Pennsylvania Pub. Util. Comm'n,* 659 A.2d 1055, 1065 (Pa.Cmwlth.1995). Nonetheless, "the exercise of its administrative discretion is not without some limitation. It may not be capricious, arbitrary, or unreasonable[.]" *Metropolitan Edison Co. v. Public Service Comm'n,* 127 Pa.Super. 11, 191 A. 678 (1937).

■ The Township argues that the Commission's decision to dismiss the complaint was an abuse of discretion, especially in light of the results of the Commission's *Investigation.* According to the Township, the *Investigation* report states as follows:

(Findlay Township) made a compelling case supporting the need for direct access (to retail wheeling) by illustrating the dif-

ferences in utility rates. There are approximately 1684 residential utility customers of Duquesne Light in Findlay Township. These customers pay an average of 13.62 cents per KWH. Residential customers residing in adjoining towns served by West Penn Power pay approximately 6.32 cents/KWH. These customers are paying less than half of what Findlay Township residents are paying. These rate comparisons are particularly alarming when in a year's time, Findlay Township residents pay a total of $1.4 million in revenues to Duquesne, or $765,000 more than if they were customers of West Penn.

Main Brief of Appellant Township of Findlay at 9, quoting PUC Staff Investigative Report released August 4, 1996. The Township further contends that hearings should be held as originally directed by the Commission's order of August 31, 1994; the apparent inconsistency in the Commission's position concerning the need for a hearing is also said to constitute an abuse of discretion. Due to changes in the electric industry since 1993, West Penn joins in arguing that the Township should have an opportunity to fully develop a record.[10]

Each complainant has a right to have the Commission hear and consider its evidence, unless "a hearing is not necessary in the public interest." 66 Pa.C.S. § 703; *Schellhammer; see also* 52 Pa.Code § 5.21. The Commission justifies denial of a hearing solely on the basis of the relief sought by the Township. Citing *Lukens Steel Co. v. Pennsylvania Pub. Util. Comm'n,* 92 Pa.Cmwlth. 530, 499 A.2d 1134 (1985), the Commission argues that as a matter of law it is not in the interest of the public as a whole,[11] to allow

10. West Penn supports immediate customer choice of utility generation supplier and choice of retail distribution supplier. The Commission and Duquesne challenge West Penn's right to appeal the Commission's order. In response, West Penn asserts that its argument in favor of remand survives, even if its petition for review is quashed, because West Penn is an intervenor in the Township's appeal. Due to our disposition of the Township's appeal, we quash West Penn's petition for review as moot.

11. *See Postal Telegraph–Cable Co. v. Pennsylvania Pub. Util. Comm'n,* 154 Pa.Super. 340, 35 A.2d 535, 538 (1944); *York R. Co. v. Pennsylvania Pub. Util. Comm'n,* 131 Pa.Super. 126, 198 A. 920, 922 (1938) (defining "public" for whose safety, accommodation and convenience the public utility law is concerned as that portion of the public who use or desire to use the service and facilities of the utility company and the general public which may come in contact with the facilities of the utilities).

"one customer" [12] to benefit from lower electric rates by switching utility companies. Further, it notes that dismissal of the Township's complaint is consistent with Commission policy that all Pennsylvania electric customers should benefit from competition in electric generation on an equitable basis. After careful consideration, we conclude that it was an abuse of discretion to dismiss the Township's complaint based upon the reasons advanced.

In *Lukens Steel*, a public utility customer submitted to the Commission a proposal designed to reduce the company's cost of electric service. The Lukens Steel Co., a customer of Philadelphia Electric Co. (PECO), proposed that Lukens Steel acquire certain property owned by Pennsylvania Power and Light (PP & L) to enable the company to take delivery of PP & L electric service. The Commission held one or more hearings at which it received testimony and documentary evidence from Lukens Steel tending to show that the company would save money if it could take delivery of electric service from PP & L and that such savings would avoid the necessity of reducing its operations and workforce. *Id.* 499 A.2d at 1137. Lukens Steel relied upon the electricity cost differential between PECO and PP & L as projected by its consultant in contending that the proposal would afford the company the financial flexibility to preserve jobs. *Id.* at 1138. Opposing evidence tended to show that any savings enjoyed by Lukens Steel would result in increased rates for both PECO and PP & L customers. *Id.* After making findings of fact addressing the cost of the proposal and its projected impact on other customers of both utilities, the Commission concluded, *inter alia*, that Lukens Steel had not proven that the electricity cost savings resulting from the transfer to PP & L was sufficient to justify the cost of the proposal and that it had not proven that the proposal was in the interests of other Pennsylvania ratepayers. *Id.* at 1139–40. The Commission thus denied the request of Lukens Steel. On appeal, this Court held that,

"substantial evidence supports the [Commission's] findings which in turn provide a firm basis for its conclusion that Lukens' proposal is not necessary or proper for the service, accommodation, convenience, or safety of the public." *Id.* at 1140. We believe that the Commission's reliance on *Lukens* is misplaced; it simply does not stand for the proposition that, *as a matter of law*, it is not in the public interest to allow "one customer" to benefit from lower rates.

■ In addition, the conditions of an individual case may not be ignored in favor of an administrative policy. *See Aizen v. Pennsylvania Pub. Util. Comm'n*, 163 Pa.Super. 305, 60 A.2d 443, 449 (1948). The Commission's stated policy of treating all Pennsylvania electric consumers equitably—far from precluding examination of the facts relevant to the Township's petition—mandates a factual determination of whether particular circumstances warrant special relief. It is the Commission's duty to determine the public interest, *Reading & S.S.R. Co. v. Pennsylvania Pub. Util. Comm'n*, 168 Pa.Super. 61, 77 A.2d 102, 104 (1950), and to protect the rights of the public. *Citizens Water Co. v. Pennsylvania Pub. Util. Comm'n*, 181 Pa.Super. 301, 124 A.2d 123, 126 (1956). *See also Bell Telephone Co. v. Driscoll*, 343 Pa. 109, 118, 21 A.2d 912, 916 (1941). This includes all ratepayers, including those who happen to be petitioners. Here—in stark contrast to its evaluation of a large body of evidence to determine the impact of Lukens Steel's proposal on the company, PP & L ratepayers, and PECO ratepayers—the Commission refused to consider *any* evidence of the impact of the Township's request on the Township, Duquesne, West Penn or any portion of the public. Since no evidence was taken, the record provides no support for the Commission's conclusion that it is not in the public interest to grant relief to the Township.

■ Next, the Commission suggests that the relief requested by the Township's complaint, distilled to its essence, is the opportu-

---

**12.** A joinder signed by 232 individuals has been submitted by the Township. Presumably, this case concerns more than one customer who could benefit from lower rates. We understand

the Commission to collectively refer to the Township and its residents when it speaks of "one customer."

nity for it and its residents to purchase electric generation from a provider other than Duquesne, a form of relief which will ultimately be provided under the terms of the 1996 Act. The Commission notes that the Township and its residents will not have long to wait to be able to choose their electric generation provider as the legislature has ordered that direct access to generation be provided to all Pennsylvanians by January 1, 2001. 66 Pa.C.S. § 2806(a),(b). Thus, the Commission submits that the issues raised in the Township's complaint have been rendered moot by passage of the Act, and moves to dismiss the Township's petition for review. Generally, this court will not review moot questions. *In re Gross,* 476 Pa. 203, 209, 382 A.2d 116, 119 (1978); *DeWeese v. Ridge,* 681 A.2d 852 (Pa.Cmwlth.1996). An issue can become moot due to an intervening change in the applicable law. *In re Gross,* 476 Pa. at 209, 382 A.2d at 120. However, the Township does not have the ability to purchase electric power in a competitive market at the present time, and the prospect of relief in the future does not necessarily render the current controversy moot. Plainly, significant questions regarding the application of the new Act to the Township's complaint exist, but they must be addressed by the Commission in the first instance. This court will not consider them in the absence of a factual record or findings by the Commission. Accordingly, we deny the Commission's motion to dismiss the Township's appeal as moot.

Even if the Act does not render the Township's complaint moot, the Commission argues that allowing the Township and its residents to secure the benefits of competition in electric generation prior to other Pennsylvania electric consumers is not equitable and runs counter to the orderly transition toward greater competition contemplated by the Act. *See* 66 Pa.C.S. § 2802(8) (declaring the Commonwealth must resolve certain transitional issues in a manner that is fair to customers, electric utilities, investors, the employees of

electric utilities, local communities, and other affected parties) and 66 Pa.C.S. § 2806 (setting forth schedule for phased implementation of retail access).

While we generally defer to the Commission's discretion in balancing such factors, *Peoples Natural Gas Co. v. Pennsylvania Pub. Util. Comm'n,* 123 Pa.Cmwlth. 481, 554 A.2d 585, 592 (1989), we note that the arguments advanced on appeal by counsel for the Commission are not based on any conclusion reached by the Commission itself.[13] We will not equate arguments of counsel with an exercise of discretion by an adjudicatory body. Moreover, the Commission cited its historical policy of disfavoring competition when dismissing the complaint, and now counsel makes arguments in support of its decision under a subsequently enacted pro-competitive statute. The Act raises complex policy and technical issues not before the Commission at the time of its decision. The interrelationship between the Township's request, its current circumstances, and the mandates of the new Act must be carefully evaluated by the Commission with the benefit of its special expertise. Absent such evaluation by the Commission, we are not prepared to hold that the Township could present *no evidence* which would justify an early transition to competitive markets or some other appropriate relief prior to the year 2001. Accordingly, we will remand for a hearing.[14]

Duquesne argues that this court can affirm the Commission's decision on the alternative basis that the Commission lacks jurisdictional authority to grant relief to the Township. In its development of this position, Duquesne's basic assumption is that relief cannot be granted without a unilateral amendment to West Penn's certificated service area over West Penn's objection. We disagree. Whatever the result might have been prior to the Act, the current regulatory scheme may have created new remedial options. Moreover, on appeal, West Penn represents that it

**13.** Commission action of making a determination of the public interest affecting the rights of an individual complainant is of a quasi-judicial nature. *See W.J. Dillner Transfer Co. v. Pennsylvania Pub. Util. Comm'n,* 186 Pa.Super. 526, 142 A.2d 419, 421 (1958).

**14.** Our disposition of this issue makes it unnecessary to address the other issues raised in the Township's petition for review, and renders moot the remaining motions to dismiss filed by the various parties.

is now willing to service the Township. Finally, the Commission contends that it could use a series of procedural mechanisms which would obviate the unilateral nature of the proceedings. Again, these issues must be addressed in the first instance by the Commission under the current state of the facts and law.

Accordingly, the order of the Commission is vacated and this case is remanded for further proceedings consistent with this opinion.[15]

*ORDER*

AND NOW, this 22nd day of July, 1998, it is hereby ordered:

1. In the above captioned matter of *Township of Findlay v. Pennsylvania Pub. Util. Comm'n,* No. 2666 C.D.1996, the motion of respondent Public Utility Commission to quash petition for review is DENIED. The order of the Pennsylvania Public Utility Commission entered September 4, 1996, is VACATED and the case is remanded for further proceedings consistent with this opinion. The motion of intervenor Duquesne Light Co. to strike portions of the petition for review is DENIED as moot.

2. In the above captioned matter of *Duquesne Light Co. v. Pennsylvania Pub. Util. Comm'n,* No. 2663 C.D.1996, the motions of intervenor Township of Findlay and respondent Public Utility Commission to quash or dismiss petition for review are GRANTED and the petition for review is DISMISSED as moot.

3. In the above captioned matter of *West Penn Power Co. v. Pennsylvania Pub. Util. Comm'n,* No. 2761 C.D.1996, the motions of intervenor Duquesne Light and respondent Public Utility Commission to quash petition for review are GRANTED and the petition for review is QUASHED as moot.

Jurisdiction is relinquished.

---

**15.** Duquesne's petition for review challenges all determinations made by the Commission in its final order, except for the determination that dismissal of the complaint was in the public interest. The Commission and Township move to quash or dismiss Duquesne's appeal for lack of standing. Since we vacate the Commission's order, we need not address these issues, and we will grant the motions to quash on the ground of mootness.